UNITED STATES of America, Plaintiff–Appellee,

v.

Kenneth N. POWELL, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Melvin L. GANN, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Gerry H. CALE, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Andrew J. WHITMORE, II, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

James B. BRADLEY, Defendant–Appellant.

Nos. 91–5171 to 91–5176.

United States Court of Appeals, Tenth Circuit.

Dec. 9, 1992.

Certiorari Denied in No. 91–5175 Feb. 22, 1993.

See 113 S.Ct. 1356.

1424

James L. Swartz, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with him on the brief), Tulsa, OK, for plaintiff-appellee.

Curtis J. Biram, Biram & Kaiser, Tulsa, OK, for defendant-appellant Powell.

Cameron W. Martin, Martin & Ramirez, Tulsa, OK, for defendant-appellant Gann.

Stephen J. Greubel, Asst. Federal Public Defender, Tulsa, OK, for defendant-appellant Cale.

Miguel S. Ramirez, Martin & Ramirez, Tulsa, OK, for defendant-appellant Whitmore.

Charles Whitman, Tulsa, OK, for defendant-appellant Bradley.

Before McKAY, Chief Judge, GIBSON,[†] and KELLY, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

Defendants were convicted of conspiracy to distribute marijuana under 21 U.S.C. § 846. They appeal their convictions and sentences. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

*Background*

In 1986, defendants Andrew J. ("A.J.") Whitmore and Kenneth ("Keno") Powell formed a partnership to import large quantities of marijuana from Texas to Oklahoma. The marijuana was transported by James B. ("Brent") Bradley, Rosa Benavides (married to Brent Bradley), Nora Gonzales and other individuals, including Mexican nationals, usually in shipments of 300–500 pounds. The marijuana was repackaged by Mr. Powell, Mr. Whitmore, Whitmore's companion Linda Hubanks, and occasionally Gerry Cale. The marijuana was then sold in bags of 20–50 pounds to Mr. Cale, Melvin Gann, Tony McClelland, Mark David Smith (who was acquitted of the conspiracy charge) and others, who resold it in smaller quantities.

In 1987, A.J. Whitmore and Keno Powell ended their partnership, but continued distributing marijuana individually. Mr. Powell's suppliers included Brent and Rosa Bradley, while Mr. Whitmore was supplied by Nora Gonzales and others. Mr. Powell continued to sell to Melvin Gann, Tony McClelland and Mark David Smith. Mr. Whitmore also sold to Mr. Gann, Mr. McClelland and Mr. Smith, as well as to Gerry Cale, Jim Pann and others. On two occasions, Jim Pann sold marijuana which he had received from A.J. Whitmore to Melvin Gann. Linda Hubanks assisted Mr. Whitmore in the distribution activities, such as transporting large sums of cash to Texas for marijuana purchases, through about 1990. Approximately 100 loads of marijuana were transported from Texas to Oklahoma from 1986 through 1991.

When arrested in March 1989, Keno Powell was in possession of $32,000 in cash and a list of names and phone numbers, including those of Melvin Gann and Mark David Smith. A.J. Whitmore and Tony McClelland were arrested in November 1990, and were in possession of over $60,000 in cash.

The first trial ended in a mistrial, when the primary government witness, Linda Hubanks, testified to a death threat by one of the defendants. The second trial result-

† The Honorable Floyd R. Gibson, Senior United States Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

ed in defendants' convictions. Defendants argue that: (1) the second trial violated double jeopardy; (2) the evidence was insufficient to convict defendants of conspiracy; (3) there was a fatal variance between the indictment and the proof at trial; (4) the district court should have granted a severance; (5) the government's trial tactics denied defendants' due process; (6) the district court should have granted a motion in limine as to appellant Bradley's prior convictions; (7) the district court erred in refusing a multiple conspiracy instruction; (8) they should not have been sentenced under the United States Sentencing Guidelines; and (9) the applicable amount of marijuana was computed incorrectly.

The defendants were sentenced as follows: Powell was sentenced to 292 months imprisonment to be followed by a five year term of supervised release; Gann was sentenced to 188 months imprisonment, a five year term of supervised release, and fined $15,000; Cale was sentenced to 188 months imprisonment to be followed by a five year term of supervised release; Whitmore was sentenced to 360 months imprisonment to be followed by a five year term of supervised release; and Bradley was sentenced to 235 months imprisonment to be followed by a five year term of supervised release.

### Discussion

### I. Double Jeopardy.

The first trial of this case ended in a mistrial. Defendants contend that the government intentionally elicited inadmissible testimony from a government witness, forcing defendants to request a mistrial, thereby precluding retrial of the case under the Double Jeopardy Clause of the Fifth Amendment. We disagree.

The government called Linda Hubanks as its first witness. On direct examination she testified to observing A.J. Whitmore pay for large amounts of marijuana, repackage it, and resell it. She was then asked about her reaction upon learning of the transactions:

> Ms. Hubanks: I said, "This is what you do?"

> Prosecutor: And did Mr. Whitmore respond to that by saying anything?

> Ms. Hubanks: He goes, "This is what I do."

> Prosecutor: And did he say anything else to you at that point?

> Ms. Hubanks: He goes—he goes, "now you know what I do, I can't let you leave."

> Prosecutor: Is that all he said, I just can't let you leave?

> Ms. Hubanks: "I can't let you leave here alive."

VII R. 41. Defendants moved for a mistrial based on the prejudicial nature of a murder threat. The district court denied the motion but admonished the jury to disregard the testimony regarding the threat. During cross examination, Ms. Hubanks stated that A.J. Whitmore "had a contract out" on her. VII R. 167. Defendants were then granted a mistrial, and moved to dismiss, arguing that the prosecutor intentionally elicited evidence of the threat. The government argues that evidence of the threat was relevant to show Mr. Whitmore's state of mind, and that it was unaware of evidence of any "contract."

The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. *United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976). The Double Jeopardy Clause, however, does not guarantee the defendant that the state will vindicate its societal interest in the enforcement of the criminal laws in one proceeding. *United States v. Jorn*, 400 U.S. 470, 483–84, 91 S.Ct. 547, 556–57, 27 L.Ed.2d 543 (1971). Ordinarily, if the defendant requests a mistrial, double jeopardy is not a bar to retrial. *United States v. Tateo*, 377 U.S. 463, 467–68, 84 S.Ct. 1587, 1590, 12 L.Ed.2d 448 (1964). A narrow exception to this rule lies where the prosecutor acts in bad faith to "goad the [defendant] into requesting a mistrial" in order to "afford the prosecution a more favorable opportunity to convict." *Dinitz*, 424 U.S. at 611, 96 S.Ct. at 1081. The prosecutor must actually intend to force the defendant to elect a mistrial.

*Oregon v. Kennedy*, 456 U.S. 667, 675–76, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982).

 We review the trial court's denial of a motion to dismiss on double jeopardy grounds under an abuse of discretion standard. *United States v. McKinnell*, 888 F.2d 669, 675 (10th Cir.1989). The district court did not find the initial testimony elicited by the prosecution sufficiently prejudicial to warrant a mistrial, and the second evidence of the threat was elicited on cross examination. Although the court ruled that the first threat-testimony was inadmissible, the government had a legitimate reason for the inquiry. Carelessness or mistake on the part of the prosecution, as opposed to a calculated move aimed at forcing the defendant to request a mistrial, is not sufficient to bar retrial under the Double Jeopardy Clause. *See United States v. Dennison*, 891 F.2d 255, 258 (10th Cir. 1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3215, 110 L.Ed.2d 663 (1990); *United States v. McMurry*, 818 F.2d 24, 25–26 (10th Cir.), *cert. denied*, 484 U.S. 837, 108 S.Ct. 120, 98 L.Ed.2d 78 (1987); *United States v. Poe*, 713 F.2d 579, 583 (10th Cir. 1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984). The district court's denial of appellants' motion to dismiss was not an abuse of discretion.

## II. Sufficiency of the Evidence and Variance.

Defendants Gann and Whitmore contend that the district court erred in denying their motions for judgment of acquittal, arguing that the evidence was insufficient to support their convictions. Alternatively, Mr. Gann and Mr. Whitmore join the other appellants in arguing for acquittal based on a variance between the single conspiracy charged in the indictment and the multiple conspiracies purportedly established at trial. Both questions require us to review the elements of a conspiracy.

### A. Sufficiency of the Evidence.

A conspiracy conviction requires the government to prove " '(1) that two or more persons agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, ... (3) that the defendant knowingly and voluntarily became a part of it,' and (4) that the alleged coconspirators were interdependent." *United States v. Evans*, 970 F.2d 663, 668 (10th Cir.1992) (quoting *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir.), *cert. denied*, ── U.S. ──, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990)), *cert. denied*, ── U.S. ──, 113 S.Ct. 1288, ── L.Ed.2d ── (1993).

 A defendant's participation in a conspiracy is proven by evidence tending to show that the defendant shared a common purpose or design with his alleged coconspirators. *Fox*, 902 F.2d at 1514. The conduct of the alleged coconspirators may be diverse and far-ranging, but it must be interdependent in some way. *United States v. Daily*, 921 F.2d 994, 1007 (10th Cir.1990), *cert. denied*, ── U.S. ──, 112 S.Ct. 405, 116 L.Ed.2d 354 (1991). Interdependence may be found if a defendant's actions facilitated the endeavors of other coconspirators or facilitated the venture as a whole. *Id.* A defendant's connection to a conspiracy may be slight, as long as the government proves defendant's knowing participation. *See Direct Sales Co. v. United States*, 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943); *United States v. Savaiano*, 843 F.2d 1280, 1294 (10th Cir.1988). Casual transactions with persons involved in a conspiracy are insufficient to establish that critical connection—one who merely purchases drugs or property for personal use from a member of a conspiracy "does not thereby become a member of the conspiracy." *Fox*, 902 F.2d at 1514. Nor does one become a member of a conspiracy merely by associating with conspirators known to be involved in crime. *Id.* We cautiously review conspiracy convictions obtained against broad groups of defendants because guilt is always dependent on personal and individual conduct, not on mere association. *See Kotteakos v. United States*, 328 U.S. 750, 773, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557 (1946); *United States v. Slater*, 971 F.2d 626, 630 (10th Cir.1992).

We review the evidence in the light most favorable to the government to determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). Credibility choices are resolved in favor of the jury's verdict, *id.* at 326, 99 S.Ct. at 2792–93; *Slater*, 971 F.2d at 632, but we will not sustain a conspiracy conviction if the evidence does no more than create a suspicion of guilt or amounts to a conviction resulting from piling inference on top of inference. *Direct Sales*, 319 U.S. at 711, 63 S.Ct. at 1269; *Slater*, 971 F.2d at 632. Mr. Whitmore and Mr. Gann argue that they were merely buyers, or "sporadic purchasers." The evidence does not support their contention.

### 1. A.J. Whitmore.

Linda Hubanks testified that Mr. Whitmore brought loads of marijuana from Texas, repackaged it in Oklahoma, and sold it out of the various houses which he rented for that purpose. She observed Mr. Whitmore in possession of up to $150,000 in cash following marijuana transactions. Mr. Whitmore instructed her on repackaging the marijuana for resale. He told her that "this is what I do." Other witnesses and government agents testified to Mr. Whitmore's involvement as a dealer and his partnership with Mr. Powell for the purpose of distribution. The evidence is more than sufficient to connect Mr. Whitmore to the conspiracy.

### 2. Melvin Gann.

Viewed in a light most favorable to the government, the evidence was sufficient for a reasonable jury to convict Mr. Gann as well. The objective of the conspiracy was to distribute large amounts of marijuana for profit. Linda Hubanks testified that she personally delivered one 20–25 pound load to Defendant Gann and she was aware of at least twelve occasions when he purchased 20–40 pounds of marijuana from Defendants Powell or Whitmore during the life of the conspiracy. Jim Pann testified that he delivered two loads of marijuana to Mr. Gann and he recalled Mr. Gann complaining about the quality of a load of marijuana received from A.J. Whitmore.

The "intent to distribute" is generally established through circumstantial evidence. *United States v. Gay*, 774 F.2d 368, 372 (10th Cir.1985). We have previously held that the intent to distribute a controlled substance may be inferred from the possession of a large quantity of the substance. *Id.* (2.4 pounds of cocaine sufficient evidence of intent to distribute); *United States v. Espinosa*, 771 F.2d 1382, 1397 n. 17 (10th Cir.) (20,000 pounds of marijuana), *cert. denied*, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985); *United States v. DuFriend*, 691 F.2d 948, 951–52 (10th Cir.1982) (600 pounds of marijuana), *cert. denied*, 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1017 (1983); *see also, United States v. Love*, 599 F.2d 107, 109 (5th Cir.) (26 pounds of marijuana), *cert. denied*, 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312 (1979); *United States v. Jones*, 880 F.2d 55, 65 (8th Cir.1989) (500 grams of cocaine); *United States v. Tebha*, 770 F.2d 1454, 1457 (9th Cir.1985) (one kilogram of heroin); *United States v. Koua Thao*, 712 F.2d 369, 371 (8th Cir.1983) (154.74 grams of opium); *United States v. DeLeon*, 641 F.2d 330, 335–36 (5th Cir.1981) (294 grams of cocaine); *United States v. Edwards*, 602 F.2d 458, 470 (1st Cir.1979) (10 ounces of heroin). The rationale for the inference is that the defendant possessed more of the substance than usual for personal use. *Gay*, 774 F.2d at 372. From the evidence adduced at trial, Mr. Gann purchased between 240 and 480 pounds of marijuana during the term of the conspiracy. The jury could reasonably conclude that such quantity was more than usual for personal use and infer an intent to distribute.

In *Evans*, we reaffirmed that the existence of a buyer-seller relationship, without more, is insufficient to connect the buyer to a larger conspiracy. 970 F.2d at 673; *see also Fox*, 902 F.2d at 1514; *United States v. Dickey*, 736 F.2d 571, 583 (10th Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). However, the prevailing defendant in that case made

only one isolated purchase and was not considered a "major buyer." 970 F.2d at 673. We consider Mr. Gann to have been a "major buyer," and he is "joined together" with the other conspirators by his knowledge of the essential features and broad scope of the conspiracy and by joining in the common goal. *See Blumenthal v. United States*, 332 U.S. 539, 558, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1947); *United States v. Horn*, 946 F.2d 738, 743 (10th Cir.1991). As with other vertically-integrated drug conspiracies, Gann's "retailing" expertise was complimentary to the "wholesaling" activities of Whitmore and Powell and vital to the success of the operation, satisfying the "interdependence" element. *See Evans* 970 F.2d at 670–71. The district court correctly denied the motion for judgment of acquittal.

### B. Variance.

Defendants contend that the government's proof showed three conspiracies: (1) a Whitmore–Powell agreement formed in 1986 and terminated in 1987; (2) a Whitmore–Hubanks conspiracy formed in 1987 and terminated in 1990; and, (3) a final conspiracy involving Whitmore and several new individuals in Texas, formed in 1990. Defendants argue that since the conspiracies were unrelated, the joint trial was prejudicial in that appellants were unprepared to defend against three conspiracies.

 Variance occurs when the evidence presented at trial establishes facts which are different from those alleged in the indictment. *United States v. Dickey*, 736 F.2d 571 (10th Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); *Dunn v. United States*, 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979). A variance prejudices a defendant when guilt is transferred to the defendant from "incriminating evidence presented in connection with the prosecution of another in the same trial for a crime in which the accused did not participate." *Dickey*, 736 F.2d at 581 (quoting *United States v. Brewer*, 630 F.2d 795, 799 (10th Cir.1980)). Whether the evidence established a single conspiracy is a fact question for the jury.

*Dickey*, 736 F.2d at 581. The jury's decision must be viewed in a light most favorable to the government. *Id.* In determining the existence of a single conspiracy, "the focal point of the analysis is whether the alleged co-conspirators were united in a common unlawful goal or purpose. Of principal concern is whether the conduct of the alleged coconspirators, however diverse and far-ranging, exhibits an interdependence." *United States v. Harrison*, 942 F.2d 751, 756 (10th Cir.1991) (citing *Daily*, 921 F.2d at 1007). Although the essential element of this "common objective" test is interdependence, most narcotics networks "involve loosely knit vertically-integrated combinations." *Dickey*, 736 F.2d at 582 (quoting *Brewer*, 630 F.2d at 799). Separate transactions are not separate conspiracies, as long as the activities were aimed at a "common, illicit goal." *Id.* "Where large quantities of drugs are being distributed, each major buyer may be presumed to know that he is part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know." *Id.*

 The evidence supports the jury's finding that a single conspiracy existed. A turnover in personnel does not terminate a conspiracy, as long as some interdependence continued. *Harrison*, 942 F.2d at 757. Interdependence continued here because there was an overlapping of suppliers, wholesalers and retailers, even though the Whitmore–Powell partnership terminated.

 Moreover, we would also point out that regardless of whether a variance exists, reversal is not required unless the variance affects the appellants' substantial rights. *Kotteakos*, 328 U.S. at 764–65; *Harrison*, 942 F.2d at 758. A defendant's substantial rights are not prejudiced merely because the "defendant is convicted upon evidence which tends to show a narrower scheme than that contained in the indictment, provided that the narrower scheme is fully included within the indictment." *Id.* (citing *United States v. Mobile Materials, Inc.*, 881 F.2d 866, 874 (10th Cir.1989)). A defendant's substantial

rights are affected if the jury determines a defendant's guilt by relying on evidence adduced against coconspirators who were involved in separate conspiracies. *Id.* Relevant factors include: 1) whether the proliferation of separate conspiracies in the case affected the jury's ability to segregate each defendant's individual actions and participation; 2) whether the variance caused confusion among the jurors as to the limited use of certain evidence; and 3) the strength of the evidence underlying the conviction. *Id.* In this case, there was more than sufficient evidence regarding each defendant's involvement in at least one aspect of the conspiracy to conclude that the appellants' substantial rights were not affected.

### III. Coconspirator Testimony.

 Defendant Cale contends that the district court erred in admitting coconspirator statements against him without first finding that he was a member of the conspiracy. This court will not disturb a trial court's evidentiary ruling absent an abuse of discretion. *United States v. Caro,* 965 F.2d 1548, 1557 (10th Cir.1992). Coconspirator hearsay evidence is properly admitted under Fed.R.Evid. 801(d)(2)(E) if the trial court determines that: (1) a conspiracy is proven by a preponderance of the evidence; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made in the course and furtherance of the conspiracy. *United States v. Johnson,* 911 F.2d 1394, 1403 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 761, 112 L.Ed.2d 781 (1991). The hearsay statements sought to be admitted may be considered in determining admissibility. *Id.* (citing *Bourjaily v. United States,* 483 U.S. 171, 179, 107 S.Ct. 2775, 2780, 97 L.Ed.2d 144 (1987)).

 At the start of trial, the district court determined that the conspiracy as charged in the indictment more probably than not existed, and properly ruled that coconspirator hearsay testimony would be conditionally admitted against all defendants. VIII R. 21. A trial court may make the conspiracy determination either prior to

or during trial, or may conditionally admit coconspirator hearsay prior to a finding of conspiracy involvement, subject to the hearsay being "connected up" to the alleged conspirator. *United States v. Pinto,* 838 F.2d 426, 433 (10th Cir.1988). After hearing testimony from coconspirator Linda Hubanks, including substantial evidence of Mr. Cale's involvement in the conspiracy, the district court ruled that the coconspirator evidence was admissible. The trial court could have been more specific concerning the required findings, particularly as to each defendant, *see United States v. Perez,* 959 F.2d 164, 167–68 (10th Cir.), *reh'g en banc granted,* 975 F.2d 677 (10th Cir.1992), but there was no abuse of discretion.

### IV. Failure to Sever.

Appellant Gann contends that the district court erred in denying his motion for a separate trial. He claims that he was inherently prejudiced from the "spillover effect" of joint trials, and also particularly prejudiced in that his codefendant Whitmore would have provided exculpatory testimony in a separate trial.

 The granting of a motion to sever is ordinarily left to the district court's discretion. To establish abuse of discretion, defendant must show that "actual prejudice resulted from the denial." *United States v. Armendariz,* 922 F.2d 602, 609 (10th Cir.1990) (citing *United States v. Hack,* 782 F.2d 862, 870 (10th Cir.) *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986)), *cert. denied,* —— U.S. ——, 112 S.Ct. 87, 116 L.Ed.2d 59 (1991). "Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' from the evidence ... against the co-defendant ... is sufficient to warrant severance." *Hack,* 782 F.2d at 870. Therefore, Mr. Gann's claim of inherent prejudice is unavailing.

*United States v. McConnell,* 749 F.2d 1441 (10th Cir.1984), set forth seven relevant factors for considering whether to sever based on potential exculpatory testimony: (1) the likelihood that the codefend-

ant would in fact testify and waive his Fifth Amendment privilege at the severed trial; (2) the significance of the testimony to the theory of defense; (3) the exculpatory nature and effect of such testimony; (4) the likelihood that the testimony would be impeached; (5) the amount of prejudice caused by the absence of such testimony; (6) the effect of the severance on judicial economy; and (7) the timeliness of the motion. *Id.* at 1445. "Severance is a matter of discretion, not of right, and the defendant bears a heavy burden of demonstrating prejudice to his case." *United States v. Rogers,* 925 F.2d 1285, 1287 (10th Cir. 1991) (quoting *United States v. Mabry,* 809 F.2d 671, 682 (10th Cir.), *cert. denied,* 484 U.S. 874, 108 S.Ct. 33, 98 L.Ed.2d 164 (1987)), *cert. denied,* — U.S. —, 111 S.Ct. 2812, 115 L.Ed.2d 985 (1991). Both *Rogers* and *Mabry* involved drug distribution conspiracies, in which appellants requested severance so that their codefendants could testify on their behalf. In both cases we found sufficient evidence establishing appellants' involvement, so that the codefendants' supposedly exculpatory testimony lacked substance.

■ Applying the *McConnell* factors to Mr. Gann's case, severance depends on the substance and credibility of codefendant Whitmore's exculpatory testimony. Mr. Whitmore signed an affidavit indicating that he would testify to the effect that neither he nor Mr. Gann had agreed to commit any crime. Unfortunately for Mr. Gann, his codefendant's testimony would totally lack credibility. The overwhelming evidence at trial showed Mr. Whitmore's extensive involvement in the distribution of marijuana. As such, the testimony would have been easily impeached. Mr. Gann was not prejudiced by the absence of such testimony. The district court did not abuse its discretion in denying severance.

## V. Fundamental Error.

Appellants Gann and Whitmore also claim fundamental error based on the cumulative effect of allegedly improper government trial techniques. The plain error doctrine "is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)); *see* Fed.R.Crim.P. 52(b). We review plain error claims by examining the entire record. *Young* 470 U.S. at 16, 105 S.Ct. at 1046.

■ First, defendants contend that the prosecutor purposely elicited inadmissible testimony of other crimes. However, this occurred in the mistrial and is not relevant to the convictions obtained in the second trial. Defendants also contend that the prosecutor attempted to elicit inadmissible testimony in the second trial. However, the district court foreclosed this line of questioning before any harm was done. Next, defendants allege bad faith discovery practices for failure to provide a written witness statement. However, as the district court noted, the statement was not discoverable material. Finally, defendants argue that government witnesses were being coached during recesses and signaled during cross examination. The record indicates that defense counsel brought this to the attention of the judge on one occasion, and the prosecutor agreed to insure that improper coaching was not occurring. The district court apparently did not observe any improper coaching and defendants did not raise the issue again. We find no plain error here.

## VI. Multiple Conspiracy Instruction.

■ In his brief, defendant Cale argues that the district court erred in refusing to instruct the jury on multiple conspiracies. He withdrew the issue at oral argument, correctly noting our recent holdings which state that the trial court need not instruct on multiple conspiracies "as long as the jury instructions adequately conveyed that 'the government had the burden of proving beyond a reasonable doubt the single conspiracy as alleged, and that the evidence should be considered separately as to each individual defendant.'" *Evans,* 970 F.2d at 675 (quoting *United States v. Watson,*

594 F.2d 1330, 1340 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979)). The jury in this case was so instructed, satisfying the standard of *Evans* and *Watson*.[1]

### VII. Lesser Included Offense Instruction.

Appellant Bradley asserts that the district court erred in refusing to instruct the jury on the offense of misprision as a lesser included offense of conspiracy to distribute controlled substances. The offense of misprision punishes the failure to report the commission of a felony. 18 U.S.C. § 4. A defendant is entitled to an instruction on a lesser included offense "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Horn*, 946 F.2d at 743 (quoting *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973)).

The test set forth by the Supreme Court for determining whether one offense is "necessarily included" in another is whether the elements of the lesser offense are a subset of the elements of the charged offense. *Schmuck v. United States*, 489 U.S. 705, 715–22, 109 S.Ct. 1443, 1450–53, 103 L.Ed.2d 734 (1989); *Horn*, 946 F.2d at 744 (the offenses of possession, possession with intent to distribute and distribution are not lesser included offenses of conspiracy to distribute controlled substances). The elements of the offense of misprision are in no way related to the offense charged, and appellant Cale was not entitled to a lesser included offense instruction.

### VIII. Appellant Bradley's Motion in Limine.

Appellant Bradley argues that the district court erred in denying his pretrial motion to exclude evidence of prior convictions. Mr. Bradley contends that the court failed to conduct a balancing test to determine whether the probative value outweighed the prejudice of such evidence. However, Mr. Bradley did not testify at trial, and the Supreme Court has held that a defendant must testify in order to preserve a claim of improper impeachment by prior conviction. *Luce v. United States*, 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984). Therefore, we are unable to review Mr. Bradley's claim.

### IX. Application of Sentencing Guidelines.

Defendants Bradley, Powell and Whitmore contest the application of the Sentencing Guidelines, arguing that they had withdrawn from the conspiracy prior to November 1, 1987, the effective date of the Guidelines. *See United States v. Hershberger*, 962 F.2d 1548, 1551 (10th Cir.1992). The evidence indicates otherwise.

Mr. Powell contends that his partnership with Mr. Whitmore ended prior to November 1, 1987. We have already determined that the conspiracy continued in spite of the partnership breakup. The district court found that the conspiracy continued into early 1991, and there is considerable evidence of Mr. Powell's drug distribution activity until his arrest in 1989.

Mr. Bradley contends that he stopped distributing marijuana for the conspiracy in October 1987. At trial, however, he testified that he was not sure of the

---

1. The jury was instructed that:

 Two essential elements are required to be proved in order to establish the offense of conspiracy as charged in count one of the indictment.

 First, that the conspiracy described in the indictment was willfully formed and was existing at or about the time alleged; and second, that the accused willfully became a member of the conspiracy.

 * * * * * *

 As stated before, the burden is always upon the prosecution to proof [sic] beyond a reasonable doubt every essential element of the crime charged. . . .

 * * * * * *

 . . . [I]n determining whether a particular defendant was a member of the conspiracy, if any, the jury should consider only his acts and statements. He cannot be bound by the acts or declarations of other participants until it is established that the conspiracy existed and that he was one of its members.

 XII R. 796–800

date, and other witnesses testified that Mr. Bradley was involved at least through 1988. As Mr. Bradley did not withdraw from the conspiracy, he is charged with the activities of the continuing conspiracy, which lasted into 1991.

As for Mr. Whitmore, there is overwhelming evidence indicating that he was involved in drug distributing activities through 1991. As such, the district court did not err in applying the Sentencing Guidelines to the appellants.

## XI. Computing the Applicable Amount of Marijuana.

Finally, all defendants dispute the amount of marijuana attributed to each of them in the district court's application of the Sentencing Guidelines. Appellants contend that their sentences were based on a greater amount of marijuana than was reasonably foreseeable.

■■■ We accept the district court's findings of fact unless they are clearly erroneous, and we give due deference to the district court's application of the Sentencing Guidelines to the facts. 18 U.S.C. §§ 3742(d)(2), (e); *United States v. Caruth*, 930 F.2d 811, 812 (10th Cir.1991). A defendant is accountable for the quantity of drugs within the scope of the conspiracy and reasonably foreseeable. U.S.S.G. 1B1.3, comment n. 1 (1989); *Evans*, 970 F.2d at 676. Absent physical evidence, estimates of quantity are acceptable if based on information that has a " 'minimum indicia of reliability.' " *United States v. Shewmaker*, 936 F.2d 1124, 1130 (10th Cir.1991) (quoting *United States v. Davis*, 912 F.2d 1210, 1214 (10th Cir.1990) *cert. denied*, —— U.S. ——, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992)). The record indicates that the district court carefully considered each defendant's participation in the conspiracy and reasonably and indeed charitably, estimated the foreseeable quantity of drugs.

■■■ Defendant Powell contends that he affirmatively withdrew from the conspiracy in August 1987 and therefore he cannot be accountable for the quantity of drugs distributed after 1987. Appellants Whitmore

and Gann join in this argument. In order to withdraw from a conspiracy an individual must take affirmative action, either by reporting to the authorities or by communicating his intentions to the coconspirators. *United States v. Parnell*, 581 F.2d 1374, 1384 (10th Cir.1978), *cert. denied*, 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979). The defendant has the burden of establishing withdrawal. *Id.* Here, the district court found that appellants Whitmore and Gann remained active in the conspiracy through 1991 and appellant Powell remained active until his arrest in 1989. The district court's findings on this issue are not clearly erroneous.

■■■ Defendant Cale contends that he was merely a "local distributor" who only dealt with Mr. Whitmore, not Mr. Powell, after the partnership breakup, and therefore should not be responsible for the entire quantity of drugs distributed. However, the evidence indicates that Mr. Cale continued to deal with other members of the conspiracy after 1987, including Melvin Gann and Tony McClelland. The quantity of marijuana passing through the distribution network was reasonably foreseeable to Mr. Cale, even if he was merely a "local distributor."

■■■ The district court adopted the probation officer's estimate of quantity as to appellants Whitmore, Powell, Cale and Gann. The estimate was based on an average amount of marijuana distributed over two years of the conspiracy. The court noted that the amount could have been much greater considering that the evidence showed the conspiracy continued for a total of five years. We will not disturb the district court's quantity determination.

Defendant Bradley similarly contends that he withdrew from the conspiracy, and that he should be attributed with only a limited quantity of drugs. The evidence indicates that Bradley transported large quantities of marijuana from Texas to Oklahoma in 1987 and 1988. Because there was no evidence of involvement after 1988,

the district court limited the quantity attributed to him. The district court's computation was reasonable.

AFFIRMED.