**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 25 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | No. 00-5255 |
| v. | (Northern District of Oklahoma) |
| DEMARQUES M. MORRIS, | (D.C. No. 99-CR-97-C) |
| Defendant-Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **MURPHY**, Circuit Judges, **VAN BEBBER**, Senior District Judge.[**]

## I. INTRODUCTION

Defendant-Appellant DeMarques M. Morris appeals his convictions arising from his participation in several robberies in Tulsa. A jury found him guilty of

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable G. Thomas Van Bebber, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

multiple counts of interference with interstate commerce, using or carrying a firearm during a crime of violence, and bank robbery. He challenges his convictions claiming that (1) the district court erred in denying his motion to suppress certain incriminating statements; (2) the district court abused its discretion in denying a motion for severance; and (3) there was insufficient evidence to convict him on the charges. We exercise jurisdiction under 28 U.S.C. § 1291 and **affirm**.

## II. BACKGROUND

On June 30, 1999, co-defendant Elliot C. Toles and Sh-Pone Harris, who was not indicted in this case, were arrested in connection with an armed robbery of a Burger King restaurant in Wichita, Kansas. Both men were brought to the FBI Violent Crime Task Force after their arrest. Detective Steven Nevil of the Wichita Police Department, who was assigned to the Task Force, was the agent investigating the case. During the course of investigation that night, the police learned from Harris that someone nicknamed Kidnap and whose first name was DeMarques was also involved in the robbery and might be driving Elliot Toles' car. At some point, officers also learned that there was an outstanding Oklahoma state warrant for Morris' arrest. By the time that authorities initially stopped Morris, police also had a description of Toles' vehicle, had developed Morris' full name, and had a physical description and the birth date of Morris. After Morris

was stopped, Harris was brought to the scene and positively identified Morris as the person Harris had been describing that night. At some point after Morris' stop, Nevil ordered his arrest.

Morris was subsequently brought to the Task Force office and interviewed alone four times by law enforcement officials: at 12:20 a.m. and 3:15 a.m. on July 1, and at 7:45 a.m. and 5:20 p.m. on July 2. Authorities also questioned Toles and Morris together on July 2 sometime after 5:20 p.m. Except for the first interview, Morris gave statements implicating himself in the robberies of the Northside Tag Agency, a Homeland grocery store, and branches of the American State Bank and the Bank of Oklahoma. The substance of each of the confessions was later admitted at trial.

During the first interview, conducted at 12:20 a.m. on July 1, authorities asked Morris if he wanted to give a statement. Morris stated that he wanted time to think about whether or not he wanted to give a statement. Sometime during this initial interview, Detective Nevil informed Morris that Harris and Toles were cooperating and giving statements to authorities. Morris was not Mirandized at this initial interview, but asserts that he invoked his right to counsel.

Authorities then left the room and returned three hours later, at approximately 3:15 a.m. on July 1. Investigators again asked Morris whether he wanted to make a statement. Morris stated that he was not sure whether he

wanted to make a statement. Detective Nevil informed Morris that authorities had spoken to Toles and Harris on tape. Morris then asked to hear the taped statements. Nevil played the statements to Morris, after which Morris signed a waiver of rights form and gave an incriminating statement. Morris gave another incriminating statement at 7:45 a.m. on July 2 after being given *Miranda* warnings and waiving his rights.

At approximately 1:00 p.m. on July 2, Morris was appointed counsel to represent him in the charges stemming from his Kansas crimes.[1] The record does not disclose whether Morris actually spoke to or had any communication with counsel. Shortly after the appointment, Morris contacted FBI Special Agent Daniel Jablonski by phone and indicated that he wished to confess to additional crimes. Jablonski reminded Morris that he was represented by counsel and that he could have counsel present at any interview. Morris indicated that he did not wish to have an attorney present. As a result, Detective Nevil interviewed Morris at the Sedgwick County Adult Detention Facility (SCADF), where Morris waived his rights and implicated himself in each of the four Oklahoma robberies. As a

---

[1]Morris was charged with various crimes related to the robbery of two grocery stores and a Burger King restaurant in Wichita, Kansas. *See United States v. Morris*, 247 F.3d 1080, 1082 (10th Cir. 2001). He was convicted of these Kansas charges after a jury trial, and this court affirmed in part and vacated and remanded in part. *See id* at 1082, 1091-92. The Oklahoma crimes, which are the subject of the instant appeal, involved various robberies in Tulsa.

result of the interviews and the ensuing criminal investigation, Morris was indicted with Toles in a superceding indictment for various offenses related to the Tulsa robberies.

Morris made a motion to suppress his confessions and any fruits thereof based on alleged violations of the Fifth and Sixth Amendments. After a hearing on July 17, 2000, the district court denied Morris' motion.

Morris also made a pretrial motion seeking severance from co-defendant Toles, which was denied orally by the district court following a hearing. Toles and Morris were tried together. During the trial, Morris renewed his motion for severance several times, but it was never granted by the court.

On direct examination by the government at trial, Detective Nevil testified that Morris had confessed to the indicted crimes, but the government did not offer a transcript or recording of the confession into evidence. On cross-examination by Toles, Nevil testified to additional details of Morris' confessions and read portions of Morris' July 2, 7:45 a.m. confession into the record. Morris did not testify at trial, but Toles testified in his own defense and Harris testified as a government witness after a grant of use immunity. After a four-day trial, a jury found Morris guilty of two counts of violating the Hobbs Act for robbing the Northside Tag Agency and the Homeland grocery store, two counts of using and carrying a firearm in the Northside Tag Agency and Homeland grocery store

robbery, and two counts of bank robbery for the robberies of the American State Bank and the Bank of Oklahoma.[2]

## III. DISCUSSION

## A. Motion to Suppress[3]

### 1. Probable Cause, Voluntariness, and Right to Remain Silent

Morris first argues that the police lacked probable cause to arrest him. He asserts that Detective Nevil's contradictory testimony at the suppression hearing indicates that the police did not know Morris' full name when he was arrested, and that officers learned of his identity and outstanding arrest warrant in Oklahoma only after he was taken into custody.

This court reviews *de novo* the district court ruling that probable cause existed at the time of arrest. *United States v. Allen*, 235 F.3d 482, 488 (10th Cir.

---

[2]Toles was also found guilty of multiple offenses and brought a separate appeal from those convictions. *See United States v. Toles*, No. 01-5009 (10th Cir. ___, 2002), Slip Op.

[3]Morris concedes that his suppression claims were previously considered by this court in the appeal from his Kansas convictions. Neither party briefed the possible applicability of *stare decisis* or issue preclusion. It is unclear whether *stare decisis* would apply to legal determinations, such as probable cause and voluntariness, that are necessarily based on the record before the district court. This court has also previously noted the circuit split over the issue whether the government may use issue preclusion against a criminal defendant. *See United States v. Gallardo-Mendez*, 150 F.3d 1240, 1242 n.3 (10th Cir. 1998) (citing cases). Neither doctrine is jurisdictional, and we need not address the applicability of either because we resolve Morris' suppression claims on the merits.

2000).  Probable cause to arrest exists when, under the totality of circumstances, an officer reasonably believes that an offense has been or is being committed by the suspect.  *Id.*  Here, Nevil had evidence developed by other officers that there was an outstanding Oklahoma warrant for Morris' arrest, Harris' information that a third robber named Kidnap may be driving Toles' car, a description of Toles' car, Morris' full name, and a physical description of Morris and his birth date.  Based on the totality of circumstances, an officer would have a reasonable belief that Morris had committed a crime.  His arrest was based on probable cause.

Morris next asserts that he was enticed into making statements about his Oklahoma robberies in order to receive the benefit of consolidation under Federal Rule of Procedure 20.  Morris' brief on this argument, however, does not contain a single citation to support his argument or otherwise argue why it is sound despite the lack of authority.  The argument is therefore waived.  *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992).

Morris also claims that he invoked his right to remain silent at the interrogation conducted at approximately 3:15 a.m. on July 1, 1999.  The district court expressly found that Morris did not invoke his right to remain silent at any time.  Morris did not testify at the suppression hearing or at trial, and has not cited to any record evidence to support his contention.  Detective Nevil testified at the hearing that Morris did not invoke his right to remain silent at the 3:15 a.m.

interview. Given that there is no record evidence that Morris invoked his right to remain silent, we need not discuss Morris' contention any further.

*2.* Edwards *Violation*

Finally, Morris claims that he also invoked his right to speak to an attorney during his first interview with police at approximately 12:20 a.m. on July 1. It is undisputed that approximately three hours after Morris' alleged invocation of his right to counsel, Detective Nevil returned to the interview room, asked Morris whether he wanted to make a statement, and informed him that Toles and Harris had given taped statements. At the suppression hearing, the government stipulated that, if Morris were to testify at the hearing, he would testify that he asked for an attorney at the 12:20 a.m. interview. The government does not cite to, nor has this court found, any record evidence at the suppression hearing or at trial which rebuts Morris' assertion that he asked for an attorney at the 12:20 a.m. interview. Nor does the government cite to any record evidence or otherwise argue that there is some other basis on which the district court could have disbelieved Morris' proffer or found that it was not credible. Thus, the district court's factual finding that "at no time did Morris . . . request to speak to [his] attorney" is clearly erroneous with regard to the 12:20 a.m. interview.

The Supreme Court has held that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present,

whether or not the accused has consulted with his attorney." *See Minnick v. Mississippi*, 498 U.S. 146, 153 (1990); *see also Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). The mere fact that the accused responded to further police-initiated custodial interrogation, even if he has been advised of his rights, is insufficient to constitute a valid waiver. *See Edwards*, 451 U.S. at 484. The accused, however, may voluntarily waive his Fifth Amendment rights after invoking the right to counsel if he initiates contact or discussion with authorities. *See Minnick*, 498 U.S. at 156; *Edwards*, 451 U.S. at 485.

The admission of Morris' incriminating statements made at 3:15 a.m. on July 1 and 7:45 a.m. on July 2 was error. Both statements were made after Morris invoked his right to counsel and law enforcement reinitiated interrogation.[4] That Morris' confessions concerned crimes other than those underlying his arrest is immaterial. *See Arizona v. Roberson*, 486 U.S. 675, 682-84 (1988).

We reach a different conclusion, however, with respect to the 5:20 p.m. confession given at the SCADF on July 2. The parties do not dispute that Morris made the 5:20 p.m. confession after contacting authorities. At that time, Agent Jablonski reminded Morris that he was represented by counsel and could have counsel present during any interviews with authorities, a reminder which Morris did not heed. There is also no record evidence that law enforcement officials

---

[4]The government does not allege that Morris was not in custody or that he was not interrogated.

-9-

interfered or prevented Morris from consulting his attorney. At the SCADF, Morris was advised of his rights and waived them. Thus, Morris validly waived his Fifth Amendment protections when he spoke to Detective Nevil at SCADF and implicated himself in the four robberies at issue in this case. *See Oregon v. Bradshaw*, 462 U.S. 1039, 1044-46 (1983) (plurality opinion).[5]

The erroneous admission of confessions in violation of *Edwards* is subject to harmless error analysis. *See United States v. Parra*, 2 F.3d 1058, 1068 (10th Cir. 1993). In this case, even though the district court erred in admitting the July 1, 3:15 a.m. statement and the July 2, 7:45 a.m. statement, those errors were harmless. With respect to the 3:15 a.m. confession, the jury heard that Morris discussed with Nevil his role in a Tulsa bank robbery. No further details of the

---

[5]Morris does not argue that the 5:20 p.m. confession was somehow tainted by the prior *Edwards*/*Minnick* violations. It is unclear under Supreme Court precedents whether a taint analysis is proper for confessions made after *Edwards* violations. *Cf. Oregon v. Elstad*, 470 U.S. 298, 307-09 (1985) (holding that the fruit of the poisonous tree doctrine is inapplicable to confessions made after the failure to give *Miranda* warnings and there was no evidence of any actual coercion). Moreover, the viability of *Elstad* itself, which was premised in part on the Supreme Court's conclusion that "[t]he *Miranda* exclusionary rule . . . sweeps more broadly than the Fifth Amendment itself," is unclear after *Dickerson v. United States*, 530 U.S. 428, 438-44 (2000).

Even assuming *Elstad* does not apply to this case, Morris' 5:20 p.m. confession was sufficiently attenuated to purge the *Edwards* violation. *See Wong Sun v. United States*, 371 U.S. 471, 491 (1963). As already noted, Morris contacted Agent Jablonski expressing his desire to speak further about the Oklahoma robberies, Jablonski reminded Morris that he had an attorney, and there is no record evidence that the authorities did anything to impede Morris from contacting his attorney.

confession were adduced at trial. With respect to the 7:45 a.m. confession, Nevil testified at trial that Morris confessed to committing a bank robbery in Tulsa. Morris gave only vague details about the name and location of the bank. He indicated, however, that he was disguised as a woman, wore a dark brown jacket and a black wig, passed a note that asked for no fake money, and stated orally he did not want any fake money.

The admission of the 3:15 a.m. and 7:45 a.m. confessions was harmless because Morris' properly admitted confession at 5:20 p.m. on July 2 implicated him in each of the four robberies charged in this case. In his 5:20 p.m. confession, Morris stated that he was responsible for a bank robbery in Tulsa but did not know the address. He indicated, however, that he wore makeup during that robbery. This admission was corroborated at trial by Cassey Hicks, a teller supervisor at a branch of the Bank of Oklahoma, who testified that the robber was a man dressed as a woman and wore red lipstick. Sh-Pone Harris testified that Morris had told him he had disguised himself as a woman during one of the robberies. Hicks also testified that the robber was an African-American male who wore a brown security guard jacket, which is consistent with Harris' testimony that he had seen Morris in possession of a brown security guard jacket. The prosecution also presented fingerprint evidence connecting Morris to the Bank of Oklahoma robbery. Given the overwhelming evidence of Morris' participation in

-11-

the Bank of Oklahoma robbery, the erroneous admission of Morris' 3:15 a.m. and

7:45 a.m. confessions was harmless.[6]

## B. Motion For Severance

This court reviews a district court's denial of a motion for severance under

Federal Rule of Criminal Procedure 14 for abuse of discretion. *See United States*

*v. Morales*, 108 F.3d 1213, 1219 (10th Cir. 1997). Rule 8(b) of the Federal Rules

of Criminal Procedure provides that defendants may be charged together "if they

are alleged to have participated in the same act or transaction or in the same

series of acts or transactions constituting an offense or offenses." Fed. R. Crim.

P. 8(b). "There is a preference in the federal system for joint trials of defendants

who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

---

[6]In light of recent Supreme Court precedent, it is unclear whether the erroneous admission of Morris' 3:15 a.m. statement and 7:45 a.m. statement amounted to a constitutional violation subject to the *Chapman* harmless error standard. *Compare Dickerson*, 530 U.S. at 438-44 (holding that *Miranda v. Arizona*, 384 U.S. 436 (1966), was a constitutional decision which cannot be superceded by Congressional action) *with New York v. Quarles*, 467 U.S. 649, 654 (1984) (indicating that *Miranda* protections are merely prophylactic and "not themselves rights protected by the Constitution" (quotation omitted)). *Dickerson* did not discuss whether *Edwards* was also a constitutional decision, or instead a prophylactic rule which merely safeguards a defendant's constitutional rights. In *United States v. Parra*, however, we applied *Chapman* harmless error analysis to the admission of a confession in violation of *Edwards*. *See* 2 F.3d 1058, 1068 (10th Cir. 1993). Even assuming that *Chapman* applies, we conclude that the admission of Morris' statements was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967).

Rule 14, however, permits a district court to grant a severance of defendants if "it appears that a defendant or the government is prejudiced by a joinder." Fed. R. Crim. P. 14. Although courts have held that mutually antagonistic defenses may be so prejudicial in some circumstances to warrant severance, they are not prejudicial *per se*. *See Zafiro*, 506 U.S. at 538. Indeed, Rule 14 does not require severance even if prejudice is shown, but instead permits the district court in its sound discretion to tailor relief. *See id.* at 538-39. A district court should grant severance

> only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant.

*Id.* at 539.

This court has also stated, however, that "[severance] is an area in which the trial judge's discretion is very broad. Thus, we will not reverse absent a strong showing of prejudice, which means that defendant's burden to show an abuse of discretion is a difficult one." *United States v. Wiseman*, 172 F.3d 1196, 1211 (10th Cir. 1999) (quotation omitted). In such circumstances, the defendant must demonstrate that the refusal to sever resulted in actual prejudice. *See United States v. Powell*, 982 F.2d 1422, 1432 (10th Cir. 1992). "Neither a mere allegation that defendant would have a better chance of acquittal in a separate

trial, nor a complaint of the 'spillover effect' . . . is sufficient to warrant severance." *Id*. (quotation omitted).

Morris claims that Toles' trial strategy was highly prejudicial to him. At trial, Toles' defense strategy was, in part, to introduce Morris' statements which implicated Toles in the Kansas robberies, but did not implicate Toles in the Oklahoma robberies. During the cross-examination of Detective Nevil, Toles had Nevil read portions of the transcript of Morris' 7:45 a.m. confession on July 2 to Nevil and Jablonski. This confession implicated Morris in the Bank of Oklahoma robbery.

Morris also maintains that Toles made several damaging statements during his trial testimony. Specifically, Toles testified that Morris was a drug user, convicted felon, and a high-ranking gang member; that he and Morris had agreed to lie to the police and confess to robberies they did not commit in order to get credit for cooperating and accepting responsibility; and that a witness in the Kansas federal trial had identified Morris.

This court has carefully reviewed the record and concludes that the district court did not abuse its discretion in denying Morris' motion for severance. By the time that Toles cross-examined Nevil, the government had already properly introduced evidence of Morris' confession to the four robberies as well as other testimony showing Morris' involvement in those crimes. Toles' cross-

-14-

examination of Detective Nevil about Morris' confessions, as well as Toles' introduction into evidence of part of the transcript of Morris' taped 7:45 a.m. confession on July 2, did not implicate Morris in any crimes other than those tried in this case. [7] As already noted, the admission of the 7:45 a.m. confession by the government was harmless error. Although Toles introduced the substance of Morris' 7:45 a.m. confession in greater detail than the government, he has failed to demonstrate how its admission or the additional information elicitied resulted in actual prejudice to his defense. *See Powell*, 982 F.2d at 1432. There was overwhelming evidence of Morris' involvement in the Bank of Oklahoma robbery, including Morris' fingerprint lifted from the crime scene, Morris' own confession to the robbery, as well as testimony from Cassey Hicks and Sh-Pone Harris which corroborated details of the robbery. Nothing in the 7:45 a.m. confession improperly introduced by Toles would warrant an automatic severance of the defendants.

Morris' argument that Toles' testimony was highly prejudicial is without merit. Morris had the opportunity to fully cross-examine Toles, but did not take the opportunity to challenge Toles' credibility or otherwise impeach his

---

[7]Although Toles had indicated at a sidebar conference that he would cross-examine Nevil about Morris' statements relating to the Kansas robberies and an unindicted bank robbery in Oklahoma City, the district court did not permit this testimony.

-15-

testimony. Thus, Morris has failed to indicate any actual prejudice that resulted from the denial of the motion for severance.

## C. Sufficiency of the Evidence

This court reviews the sufficiency of evidence *de novo*. *See United States v. Malone*, 222 F.3d 1286, 1290 (10th Cir. 2000). However, we do so "viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government. We will reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 1290-91 (quotation omitted).

### 1. Northside Tag Agency

Morris alleges that there was no evidence that the robbery affected interstate commerce to satisfy the commerce requirement of the Hobbs Act. He concedes, however, that this court's precedents require only that the government demonstrate a *de minimis* effect on interstate commerce to satisfy the Hobbs Act's nexus requirement. *See id.* at 1294-95. The testimony adduced at trial indicated that the tag agency accepted out-of-state checks and cleared out-of-state credit cards. As a result of the robbery, money was taken from the tag agency and the tag agency was closed for the remainder of the day. To establish the requisite *de minimis* effect on commerce, the government need only demonstrate that the robbery had a potential effect on the sale of goods in interstate

commerce. *See United States v. Toles*, No.01-5009, slip op. at __ (10th Cir.
____, 2002); *see also Wiseman*, 172 F.3d at 1216. We conclude that there was
sufficient evidence for a jury to infer that the robbery of the Northside Tag
Agency had a *de minimis* effect on interstate commerce.

Morris also challenges the sufficiency of the evidence with respect to his
18 U.S.C. § 924(c) conviction. Morris confessed to the tag agency robbery and
Harris testified that he had heard Toles and Morris discussing the robbery of
Oklahoma tag agencies. Thomas McGee and Nikisha Harris testified that one of
the robbers wore a yellow construction hat, which corroborated Harris' testimony
that he saw Morris in possession of such a hat. McGee further testified that he
had no doubt that the gun used in the robbery was real. We find no merit to
Morris' claim.

*2. Homeland Grocery Store*

Morris makes similar challenges to the Hobbs Act and 18 U.S.C. § 924(c)
convictions for the robbery of a Homeland grocery store. The trial testimony
contained overwhelming evidence of Morris' guilt, including Morris' confession
and Harris' testimony corroborating that of eyewitness Raymond Crawford.
There was sufficient evidence for a reasonable jury to find Morris guilty of both
counts.

*3. American State Bank and Bank of Oklahoma*

Lastly, Morris claims there was insufficient evidence to convict him of robbing the American State Bank and the Bank of Oklahoma. Morris confessed to both robberies and included details of the robberies and the disguises he used, which were corroborated by eyewitnesses, Harris, and Toles. The prosecution also presented fingerprint evidence connecting Morris to the Bank of Oklahoma robbery. Given the wealth of evidence in both robberies, this court affirms the convictions.

Accordingly, this court **AFFIRMS** the Defendant's convictions in all respects.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

**No. 00-5255, <u>United States v. Morris</u>**

**BRISCOE**, Circuit Judge, concurring and dissenting:

I concur in the majority's resolution of all of the issues except its affirmance of the Hobbs Act conviction arising out of the robbery of the Northside Tag Agency. For the reasons set forth in my concurring and dissenting opinion in <u>United States v. Toles</u>, No. 01-5009, I conclude that the evidence presented by the government was insufficient to establish that the Northside Tag Agency robbery had the required minimal effect on interstate commerce. I would reverse Morris' conviction and vacate his sentence on this count.