FILED
United States Court of Appeals
Tenth Circuit

June 24, 2019

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 18-3169

JERMAINE TYRELL PATTON,

    Defendant - Appellant.

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 5:16-CR-40113-DDC-1)**
_____

David M. Magariel, Assistant Federal Defender (Melody Brannon, Federal Public Defender, with him on the brief), Kansas City, Kansas, for the Defendant - Appellant.

Jared S. Maag, Assistant United States Attorney (Stephen R. McAllister, United States Attorney, and James A. Brown, Assistant United States Attorney, with him on the brief), Topeka, Kansas, for the Plaintiff - Appellee.
_____

Before **MATHESON**, **SEYMOUR**, and **BACHARACH**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

Jermaine Tyrell Patton was the getaway driver in a string of armed robberies that ended in his arrest. An hour after Mr. Patton's arrest, his associate shot a police detective who was investigating the pair's most recent robbery. Mr. Patton pled guilty to aiding

and abetting (1) Hobbs Act robbery and (2) carrying of a firearm during the robbery. To account for the shooting, the district court increased his United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") advisory sentencing range by applying (1) U.S.S.G. § 2B3.1(b)(3)(C) ("the Robbery Guideline") for infliction of "[p]ermanent or [l]ife-[t]hreatening [b]odily [i]njury" and (2) U.S.S.G. § 3A1.2(c)(1) ("the Official Victim Guideline") for assault on a law enforcement officer.

Mr. Patton challenges the district court's application of these Guidelines, arguing (1) the Robbery Guideline does not apply because the shooting was not his relevant conduct under U.S.S.G. § 1B1.3(a)(1)(B) ("the Relevant Conduct Guideline") and (2) the Official Victim Guideline does not apply because (a) the shooting was not his relevant conduct, (b) he was not "otherwise accountable" for the shooting, and (c) it did not occur during "immediate flight" from the robbery. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), we affirm.

## I.  BACKGROUND

This section presents the factual background, a description of the relevant Guidelines, and the procedural history of this case.

### A.  *Factual Background*

In 2016, Mr. Patton and Christopher Harris robbed the Oakmart gas station and convenience store in Topeka, Kansas, their third convenience store robbery in a week. Mr. Harris entered the store with a firearm and demanded money while Mr. Patton remained in the getaway car.

A police officer spotted the pair soon after they fled in the car. Mr. Patton stopped the car, and the two men fled on foot into a wooded area. Police officers apprehended Mr. Patton "almost immediately," Record on Appeal ("ROA"), Vol. III at 64, but Mr. Harris remained at large for just over an hour. Police officers "set up a perimeter in the area trying to contain" Mr. Harris. Supp. ROA at 134.

At the end of the hour, Detective Brian Hill, who was investigating the robbery, encountered Mr. Harris walking two or three miles from where Mr. Patton had been arrested. Mr. Harris shot Detective Hill, and Detective Hill returned fire. The exchange of fire wounded both men badly and forced the detective's retirement from the Topeka Police Department.

### B. *Relevant Sentencing Guidelines*

The Robbery Guideline and the Official Victim Guideline used to calculate Mr. Patton's sentence are "determined on the basis of" his "relevant conduct," as defined in the Relevant Conduct Guideline. U.S.S.G. § 1B1.3(a).[1] "The government bears the burden of proving sentencing enhancements by a preponderance of the evidence." *United States v. Orr*, 567 F.3d 610, 614 (10th Cir. 2009).

### 1. **Relevant Conduct Guideline**

"Under the Sentencing Guidelines, the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and

---

[1] Mr. Patton was sentenced under the 2016 Guidelines. All citations are to that version unless otherwise noted.

not just with regard to the conduct underlying the offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995). "Section 1B1.3 of the [Guidelines] defines relevant conduct and explains the rules for determining what acts or omissions are considered relevant conduct to a given offense type." Office of Gen. Counsel, U.S. Sentencing Comm'n, Primer: Relevant Conduct 2 (2019). Section 1B1.3(a)(1) "contains the basic rules of relevant conduct applicable to all offenses." *Id.*

Section 1B1.3(a)(1) defines a defendant's relevant conduct in two ways, either or both of which may apply in a given case. *See* U.S.S.G. § 1B1.3 cmt. 2. First, it covers "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. 1B1.3(a)(1)(A). Second, "in the case of a jointly undertaken criminal activity," relevant conduct includes "all acts and omissions of others that . . . occurred during the commission of the offense of conviction . . . or in the course of attempting to avoid detection or responsibility for that offense," if the acts were also:

> (i) within the scope of the jointly undertaken criminal activity,
>
> (ii) in furtherance of that criminal activity, and
>
> (iii) reasonably foreseeable in connection with that criminal activity . . . .

U.S.S.G. § 1B1.3(a)(1)(B).[2] The parties agree that only the second definition—§ 1B1.3(a)(1)(B)—is at issue here. *See* ROA, Vol. I at 89; Aplt. Br. at 11.

---

[2] There are three additional definitions under § 1B1.3(a). Section 1B1.3(a)(2) "adopts broader rules for those offense types that typically involve a pattern of

2. **Robbery Guideline**

Chapter Two of the Guidelines concerns offense conduct. Each offense has a corresponding offense level. Robbery has a base offense level of 20, U.S.S.G. § 2B3.1(a), which is increased by six "[i]f any victim sustained bodily injury" that was "[p]ermanent or [l]ife-[t]hreatening." U.S.S.G. § 2B3.1(b)(3)(C).

3. **Official Victim Guideline**

Chapter Three of the Guidelines provides for adjustments of the offense level. The Official Victim Guideline provides for a victim-related adjustment. It calls for a six-level increase

> [i]f, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom . . . .

U.S.S.G. § 3A1.2(c)(1).

---

misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing." Office of Gen. Counsel, U.S. Sentencing Comm'n, Primer: Relevant Conduct 2 (2019). Section 1B1.3(a)(3) encompasses "harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) . . . and all harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a)(3). Finally, § 1B1.3(a)(4) "requires consideration of any information specified in the applicable guideline." U.S.S.G. § 1B1.3 cmt. background.

## C. *Procedural Background*

### 1. Information and Guilty Plea

The Government filed an information charging Mr. Patton in the Oakmart robbery. Count one alleged aiding and abetting Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). Count two alleged aiding and abetting using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). Mr. Patton pled guilty to both counts.[3]

### 2. Presentence Investigation Report

The Probation Office prepared a Presentence Investigation Report ("PSR"), which calculated a base offense level of 20. The PSR also recommended two six-level increases under § 2B3.1(b)(3)(C) and § 3A1.2(c)(1) to account for Detective Hill's shooting injuries. After a three-level decrease under § 3E1.1 for acceptance of responsibility, the PSR calculated a total offense level of 29. It assigned Mr. Patton a criminal history category of IV. The resulting Guidelines range was 121 to 151 months for the Hobbs Act robbery and an additional 60 consecutive months for the § 924(c) offense.[4]

---

[3] Mr. Patton's plea agreement waived many of his appeal rights but reserved the right to "challenge and appeal any enhancement applied under . . . § 2B3.1(b)(3)(C)." ROA, Vol. I at 77. At the sentencing hearing, the Government stated that application of the Robbery Guideline and the Official Victim Guideline were "interconnected" and that it would not "object if [Mr. Patton] wishes to appeal" the application of the Guideline section omitted from the exception to the plea waiver. ROA, Vol. III at 147.

[4] Sentences imposed under § 924(c) shall not "run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence . . . during which the firearm was used, carried, or possessed." 18 U.S.C. § 924(c)(1)(D)(ii).

Mr. Patton objected to the PSR. Two objections are relevant here: (1) that "the shooting should not be considered relevant conduct under . . . § 1B1.3(a)(1)(B)," in part because he was in custody when Mr. Harris shot Detective Hill, *see* ROA, Vol. I at 103, 107; and (2) that the Official Victim Guideline should not apply because (a) Mr. Patton was not "otherwise accountable" for Mr. Harris's action and (b) the shooting did not occur during "immediate flight" from the robbery, *id.* at 109-10.[5] He urged the court to calculate a Guidelines range of 37 to 46 months for the Hobbs Act robbery and a consecutive 60 months for the § 924(c) offense.

3. **Sentencing**

At sentencing, the district court heard testimony to the facts underlying the offense, the shooting, and the arrests from Topeka police officer Patrick Salmon. The court then overruled the two objections described above.

First, the district court concluded that § 2B3.1(b)(3)(C)'s six-level increase applied because all of the factors in the relevant conduct definition for jointly undertaken criminal activity were met. The shooting was within the scope of jointly undertaken criminal activity, the court said, because Mr. Patton "agreed to jointly undertake a forced armed robbery where a firearm was used" and "the scope of that jointly undertaken criminal activity expanded" when both men fled. ROA, Vol. III at 108. The shooting

---

[5] Mr. Patton failed to argue in district court, as he does on appeal, that the Official Victim Guideline did not apply because the shooting was not his relevant conduct. Because we affirm that the shooting was relevant conduct for the application of the Robbery Guideline, we do not consider whether Mr. Patton forfeited this argument.

7

was in furtherance of that criminal activity because "jointly undertaken flight and eluding" are related to the underlying crime. *Id.* at 109. And when "a defendant . . . agrees to participate in an armed robbery with a codefendant and then subsequently decides and agrees to take flight with his codefendant," it is foreseeable that "the codefendant might [use a firearm] . . . against a law enforcement officer who responded to the report of the crime." *Id.* at 110.

Second, the district court concluded that § 3A1.2(c)(1) applied because there was no "break in causation between the flight from the robbery and the shooting." *Id.* at 114. The court rejected Mr. Patton's argument that the shooting was not during "immediate flight" from the offense and did not expressly address the argument that he was not "otherwise accountable" for the shooting. *Id.* at 113-14.

## II. **DISCUSSION**

We discuss our standard of review and then consider Mr. Patton's challenges to his sentence. In each instance, the district court did not err.

### A. *Standard of Review*

We review a sentence's procedural and substantive reasonableness for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007). This appeal concerns procedural reasonableness because it relates to whether the district court "correctly calculated the applicable Guidelines range." *Id.* at 51, 53.

"[W]e review factual findings for clear error and legal determinations de novo." *Orr*, 567 F.3d at 614 (quotations omitted). "An error of law is per se an abuse of discretion." *United States v. Sanchez-Leon*, 764 F.3d 1248, 1262 (10th Cir. 2014)

8

(quotations omitted). "We review the district court's . . . ultimate determination of relevant conduct de novo." *United States v. Tran*, 285 F.3d 934, 938 (10th Cir. 2002); *see also United States v. Damato*, 672 F.3d 832, 838 (10th Cir. 2012).

## B. *Sentencing Challenges*

Mr. Patton challenges the district court's decision to increase his sentencing offense level (1) by six under the Robbery Guideline and (2) by six under the Official Victim Guideline.

### 1. **Robbery Guideline**

The district court did not err in adding six levels under § 2B3.1(b)(3)(C) to determine the robbery offense level. Mr. Harris's shooting of Detective Hill was Mr. Patton's relevant conduct under § 1B1.3(a)(1)(B) because it was within the scope of Mr. Patton's agreement to commit robbery, in furtherance of it, and foreseeable. Further, Mr. Patton's argument that his arrest limited his relevant conduct is unpersuasive.

#### a. *Additional legal background*

We provide additional legal background on the definition of relevant conduct and then explain how it applies in the context of robbery.

##### i. Relevant conduct

As noted above, this appeal concerns the relevant conduct definition in § 1B1.3(a)(1)(B). Under that definition, scope of the agreement, furtherance, and reasonable foreseeability are "independent and necessary elements of relevant conduct." *United States v. Willis*, 476 F.3d 1121, 1129 (10th Cir. 2007) (quotations omitted); *see also* U.S.S.G. § 1B1.3 cmt. 3(A). "These elements closely correspond to the classic

9

statement of the common law requirements for substantive conspiracy liability." *United States v. Spotted Elk*, 548 F.3d 641, 673 (8th Cir. 2008) (citing *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946)). Nonetheless, the definition applies whether or not a conspiracy is charged. U.S.S.G. § 1B1.3 cmt. 3(A). Mr. Patton challenges the district court's determinations about scope and furtherance but not about foreseeability. *See* Aplt. Br. at 10.

### 1) Scope

To determine whether an act or omission is the defendant's relevant conduct, "the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake." *United States v. McClatchey*, 316 F.3d 1122, 1128 (10th Cir. 2003) (emphasis omitted). This determination requires "particularized findings tying the defendant to the relevant conduct." *Willis*, 476 F.3d at 1130 (quotations omitted). "Acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable to the defendant, are not relevant conduct under subsection (a)(1)(B)." U.S.S.G. § 1B1.3 cmt. 3(B).

### 2) Furtherance

"The court must determine if the conduct (acts and omissions) of others was in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3 cmt. 3(c).

### ii. Relevant conduct in the robbery context

The commentary to the Relevant Conduct Guideline illustrates how § 1B1.3(a)(1)(B) applies to a robbery getaway driver:

Defendant C is the getaway driver in an armed bank robbery in which . . . a teller is assaulted and injured. . . . Defendant C is accountable for the injury to the teller under subsection (a)(1)(B) because the assault on the teller was within the scope and in furtherance of the jointly undertaken criminal activity (the robbery), and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense).

U.S.S.G. § 1B1.3 cmt. 4(B)(i).

Applying this commentary, we held that a bank robbery defendant's relevant conduct included an associate's threat to kill someone. *See United States v. Lambert*, 995 F.2d 1006, 1009 (10th Cir. 1993). In *United States v. Metzger*, 233 F.3d 1226 (10th Cir. 2000), we held a bank robbery defendant's relevant conduct included an off-duty police officer's shooting of a bystander in the bank parking lot when the officer mistook the bystander for the escaping defendant. *Id.* at 1227-29 (relying on § 1B1.3(a)(1)(A) and (a)(3)).[6] We also have said relevant conduct extends to a getaway driver who has already fled the scene, leaving his armed associates behind. *Id.* at 1228 ("A robber may . . . be held accountable . . . for an injury to a victim by a responding police officer even after the robber has driven blocks away toward his home.").[7] The Ninth Circuit has held that a

---

[6] S*ee also United States v. Molina*, 106 F.3d 1118,1124-25 (2d Cir. 1997) (holding under § 1B1.3(a)(1)(3) that a robbery defendant's relevant conduct could include an armed guard's wounding of a bystander). The same is true when the establishment robbed is not a bank. *See United States v. Parsons*, 664 F. App'x 187, 191-92 (3d Cir. 2016) (unpublished) (robbery of a drugstore); *United States v. Maddox*, 803 F.3d 1215, 1221-22 (11th Cir. 2015) (same).

The unpublished cases cited in this opinion are included for their persuasive value. *See* 10th Cir. R. 32.1; Fed. R. App. P. 32.1.

[7] *See also Parsons*, 664 F. App'x at 191 ("Although [the defendant] left the scene of the crime and may not have known that his confederates had shot at law enforcement

11

robbery defendant's relevant conduct includes an associate's shooting at responding police officers even when the defendant was not present. *See United States v. Franklin*, 321 F.3d 1231, 1235-36 (9th Cir. 2003).

A defendant's relevant conduct may also include an associate's actions during flight. "Flight and pursuit are links in the chain of events set in motion by a . . . robbery." *Metzger*, 233 F.3d at 1228 (quotations omitted). This is because "a robbery cannot be completed without some form of flight or attempted flight, so robbery is more naturally understood to include the act of fleeing and the immediate consequences of such flight." *Id.* (quotations and brackets omitted). Indeed, a majority of states "have . . . adopted the continuing offense theory of robbery," defining robbery to include instances of theft where the defendant uses violence during flight from the offense. *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1235 (10th Cir. 2009).

b. *Analysis*

Mr. Patton does not dispute the district court's findings that he "agreed to jointly undertake a forced armed robbery where a firearm was used," ROA, Vol. III at 108, and that Mr. Harris's shooting of Detective Hill was foreseeable to him. *See* Aplt. Br. at 13. But he contests the court's finding that the shooting was within the scope and in

---

officers, he is nevertheless 'otherwise accountable' for their conduct.") (applying § 1B1.3(a)(1)(B) and § 3A1.2(c)(1)); *United States v. Gamez*, 301 F.3d 1138, 1141, 1146-48 (9th Cir. 2002) (holding a defendant's relevant conduct included a co-conspirator's murder of a border patrol agent shortly after the conspirators were confronted and the defendant fled); *Molina*, 106 F.3d at 1120.

furtherance of the jointly undertaken criminal activity, emphasizing that he was arrested before the shooting.  We agree with the district court.

     i.  <u>Scope</u>

Because robberies carry with them "the inherent prospect that someone could be injured," *Metzger*, 233 F.3d at 1228 (referring to bank robbery), violence against a victim is within the scope of an armed robbery, in furtherance of it, and foreseeable, *see* U.S.S.G. § 1B1.3 cmt. 4(B)(i); *see also Metzger*, 233 F.3d at 1227-29; *Lambert*, 995 F.2d at 1009.  We agree with the Ninth Circuit that this includes violence against a police officer.  *See Franklin*, 321 F.3d at 1235-36.  Accordingly, had Mr. Harris shot Detective Hill at the Oakmart gas station and convenience store during the robbery itself, the shooting would qualify as Mr. Patton's relevant conduct.

The result is no different when Mr. Harris shot Detective Hill while attempting to elude police when Mr. Patton was elsewhere.  Relevant conduct includes acts and omissions "in the course of attempting to avoid detection or responsibility" for the offense.  U.S.S.G. § 1B1.3(a)(1).  And robbery "include[s] the act of fleeing and the immediate consequences of such flight." *Metzger*, 233 F.3d at 1228 (quotations omitted).  A defendant's relevant conduct may include acts or omissions an associate takes even when the defendant is not present.  *See United States v. Parsons*, 664 F. App'x 187,

13

191-92 (3d Cir. 2016); *Franklin*, 321 F.3d at 1235-36; *Metzger*, 233 F.3d at 1228; *United States v. Molina*, 106 F.3d 1118, 1120 (2d Cir. 1997).[8]

### ii. Furtherance

Mr. Patton argues that Mr. Harris's conduct could not be in furtherance of the jointly undertaken robbery after Mr. Patton's arrest because "once Mr. Patton was taken into . . . custody . . . he could do nothing to further any jointly undertaken criminal activity." Aplt. Br. at 18. But the shooting did further the jointly undertaken activity because Mr. Harris was still at large and attempting to elude police—one of the goals of a joint robbery. His shooting of Detective Hill sought to advance this goal by permitting his escape.

### iii. Mr. Patton's argument about arrest

Mr. Patton argues his arrest foreclosed any sentencing accountability for the shooting. We disagree. As explained above, Mr. Patton's absence from the scene of the shooting does not limit his relevant conduct. *See Parsons*, 664 F. App'x at 191-92; *Franklin*, 321 F.3d at 1235-36; *Metzger*, 233 F.3d at 1228; *Molina*, 106 F.3d at 1120. Nor does Mr. Patton argue that he withdrew from the jointly undertaken robbery. *See United States v. Ruiz-Castro*, 92 F.3d 1519, 1538 (10th Cir. 1996), *overruled on other grounds by United States v. Flowers*, 464 F.3d 1127 (10th Cir. 2006) ("Absent any affirmative withdrawal, a defendant remains part of the ongoing criminal enterprise."

---

[8] Because we conclude that the shooting was within the scope of Mr. Patton's agreement to commit the robbery, we do not address the district court's finding that the agreement expanded when the two men fled.

14

(quotations and brackets omitted)); *United States v. Torres*, 53 F.3d 1129, 1144 n.15 (10th Cir. 1995) (similar).  Doing so would require him to prove that he took "affirmative action, either by reporting to the authorities or by communicating his intentions to the coconspirators." *United States v. Powell*, 982 F.2d 1422, 1435 (10th Cir. 1992).  Mr. Patton bears this burden.  *Id.*

Instead, Mr. Patton relies on *United States v. Melton*, 131 F.3d 1400 (10th Cir. 1997), to argue that he cannot be held responsible for the shooting because it happened after his arrest.  Aplt. Br. at 14-15.  His reliance on *Melton* is misplaced.  In that case, federal agents arrested co-conspirators Mr. Melton and Mr. Delaney as they were making initial preparations with others to print counterfeit money.  *Melton*, 131 F.3d at 1402.  After the arrest, the government convinced Mr. Delaney to help set up a reverse sting operation, which eventually printed $30 million in counterfeit bills.  *Id.*

Although Mr. Melton had nothing to do with the sting operation, the district court enhanced his sentence, finding the $30 million in counterfeit printing was his relevant conduct under § 1B1.3(a)(1)(B) because it was a foreseeable consequence of the conspiracy.  *Id.* at 1402-03.  On appeal, this court identified "two possible grounds" for the district court's sentencing enhancement.  *Id.* at 1404.  We disagreed as to both and vacated the sentence.

First, we disagreed that the scope of Mr. Melton's participation in the conspiracy extended beyond his arrest.  We reasoned that (1) "the original agreement was abandoned and was replaced by a reverse sting operation" that "was entirely set up and funded by the government with the cooperation of Mr. Delaney"; (2) the record lacked any indication

15

"that the post-arrest metamorphosis of the original counterfeiting plan was within the scope of the criminal activity Mr. Melton agreed to undertake"; and (3) "the government clearly conceded that Mr. Melton's participation in the conspiracy terminated with his arrest and that [he] had absolutely no involvement with the reverse sting operation." *Id.* at 1405.[9]

Mr. Patton's case is different. The robbery agreement was not abandoned, the government did not set up anything resembling a reverse sting operation, there was no "metamorphosis" of the robbery plan, and the Government has not conceded that Mr. Patton's involvement in the robbery ended with his arrest. Nor has Mr. Patton cited evidence sufficient to prove that his involvement ended with his arrest.

Second, we disagreed that "it was reasonably foreseeable to Mr. Melton that $30 million of currency would be produced in the original counterfeiting scheme." *Id.* at 1404. We first pointed out that foreseeability does not "inform" the scope or furtherance elements of relevant conduct. *Id.* at 1405. More to the point, we also said the district court "arbitrarily assign[ed] $30 million . . . of counterfeit money foreseeable to Mr. Melton" and therefore made a "clearly erroneous" determination. *Id.* at 1406.

---

[9] The *Melton* panel said that "a conspirator's arrest or incarceration by itself is insufficient to constitute his withdrawal from the conspiracy," but "an arrest may under certain circumstances amount to a withdrawal." 131 F.3d at 1405 (citations omitted). The government's concession that Mr. Melton terminated participation was such a circumstance. The court appeared to tie withdrawal from the conspiracy to its analysis of the scope of joint criminal activity attributable to Mr. Melton.

Mr. Patton's case, again, is different. Indeed, he does not even contest that Mr. Harris's shooting of Detective Hill was foreseeable. And as shown above, the district court did not err in finding that the relevant conduct elements of scope and furtherance were met. In short, *Melton* is inapposite.

\* \* \* \*

Mr. Harris's shooting of Detective Hill was within the scope of the jointly undertaken robbery, in furtherance of it, and foreseeable. Notwithstanding his arrest, the shooting qualifies as Mr. Patton's relevant conduct. The district court did not err in applying the Robbery Guideline's six-level increase to Mr. Patton's offense level.

2. **Official Victim Guideline**

Mr. Patton argues the district court erred in applying the Official Victim Guideline's six-level increase. He contends, (1) as with the previous issue, that the shooting was not his relevant conduct; (2) that he was not "otherwise accountable" for the shooting, as he says § 3A1.2(c)(1) requires; and (3) that the shooting occurred during the "immediate flight" from the robbery. We disagree with his arguments and affirm.

a. *Additional legal background*

We provide additional legal background on the applicability of the Relevant Conduct Guideline to the words "otherwise accountable" in the Official Victim Guideline and on the meaning of "immediate flight" in the Official Victim Guideline.

17

i. Application of the Relevant Conduct Guideline to "otherwise accountable" in the Official Victim Guideline

The Official Victim Guideline applies to assaults on a law enforcement officer by the defendant "or a person for whose conduct the defendant is otherwise accountable." U.S.S.G. § 3A1.2(c). Although the comments to the Guideline do not define "otherwise accountable," the Relevant Conduct Guideline provides that "[u]nless otherwise specified . . . adjustments in Chapter Three [of the Guidelines] shall be determined on the basis of" the definition of relevant conduct in § 1B1.3. U.S.S.G. § 1B1.3(a).

In *United States v. Johnson*, 977 F.2d 1360 (10th Cir. 1992), we held that a defendant was "otherwise accountable" under the Official Victim Guideline for "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." *Id.* at 1383 (quotations omitted). We observed that this was the definition of "otherwise accountable" then provided by the commentary to § 1B1.3. *Id.* Other circuits also have equated § 1B1.3's definition of relevant conduct with "otherwise accountable" in the Official Victim Guideline. *See Parsons*, 664 F. App'x at 190-91; *United States v. Null*, 234 F.3d 1270, at *6 (6th Cir. 2000) (unpublished); *United States v. Gonzales*, 996 F.2d 88, 93 (5th Cir. 1993).[10]

---

[10] *Johnson* and *Gonzales* concerned an earlier version of the Relevant Conduct Guideline. We think *Johnson* is still governing Tenth Circuit precedent. The history of the Official Victim and Relevant Conduct Guidelines shows that the former's use of "otherwise accountable" refers to jointly undertaken criminal activity. In 1989, the precursor to § 3A1.2(c)(1) was added to the Guidelines, providing for an increase in offense level for assaults on law enforcement officers by "the defendant or a person for whose conduct the defendant is *otherwise accountable*." U.S.S.G. § 3A1.2(b) (1989) (emphasis added). The phrase "otherwise accountable" also appeared in § 1B1.3's definition of relevant conduct in that year's Guidelines. *See* U.S.S.G. § 1B1.3(a)(1)

18

By contrast, in *United States v. Iron Cloud*, 75 F.3d 386 (8th Cir. 1996), the Eighth Circuit interpreted "otherwise accountable" in the Official Victim Guideline as requiring "that the defendant expressly or impliedly ordered, encouraged, or in some way assisted in the assailant's conduct." *Id.* at 390. *Iron Cloud* did not mention the Relevant Conduct Guideline. *See id.*

### ii. Meaning of "immediate flight"

The Official Victim Guideline provides for a six-level increase for assaults on law enforcement officers "during the course of the offense or immediate flight therefrom." U.S.S.G. § 3A1.2(c)(1). Neither the Guideline nor the commentary define "immediate flight." We have found only two cases that meaningfully discuss the words "immediate flight" in the Official Victim Guideline.[11]

---

(1989). The commentary to § 1B1.3 stated, "[T]he conduct for which the defendant 'would be *otherwise accountable*' also includes conduct of others in furtherance of the execution of . . . *jointly-undertaken criminal activity* that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3 cmt. 1 (1989) (emphasis added).

 In 1992, the Relevant Conduct Guideline was amended to omit the phrase "otherwise accountable." *See* U.S.S.G. § 1B1.3(a)(1) (1992). The amendment moved the description of jointly undertaken criminal activity from the commentary to the Relevant Conduct Guideline's text. *See* U.S.S.G. § 1B1.3(a)(1)(B) (1992). But the Official Victim Guideline continued to use the phrase "otherwise accountable." *See* U.S.S.G. § 3A1.2(b) (1992). The amendment to the Relevant Conduct Guideline to omit "otherwise accountable" did not change the meaning of the Official Victim Guideline—the words "otherwise accountable" did not take on a different meaning in the Official Victim Guideline because of the change to the Relevant Conduct Guideline. For this reason, the amendment did not undercut *Johnson*.

 [11] A few other cases discuss the term "immediate flight" in a context not relevant to this case. For example, *United States v. Levario-Quiroz*, 161 F.3d 903 (5th Cir. 1998) holds that the Official Victim Guideline does not apply to an assault that occurs "*prior to*" the offense "or immediate flight therefrom." *Id.* at 908 (emphasis added).

The first, *United States v. Collins*, 754 F.3d 626 (8th Cir. 2014), noted that the term immediate flight appears to be narrower than § 1B1.3(a)(1)'s reference to "the course of attempting to avoid detection or responsibility for [the] offense." *Id.* at 631. In other words, "reading § 3A1.2(c)(1) to include all relevant conduct would make the phrase 'immediate flight therefrom' surplusage." *Id.*

The other case is *United States v. Dougherty*, 754 F.3d 1353 (11th Cir. 2014), which relied on dictionaries to understand "immediate flight." *See id.* at 1359. The Eleventh Circuit quoted several definitions of "immediate": "'occurring without delay; instant,'" *id.* (quoting Black's Law Dictionary 751 (7th ed. 1999)); "'occurring, acting[,] or accomplished without loss of time; made or done at once; instant,'" *id.* (quoting Webster's Third New International Dictionary 1129 (unabridged ed. 1986)); and "'occurring, accomplished[,] or taking effect without delay or lapse of time; done at once; instant,'" *id.* (quoting 7 Oxford English Dictionary 681 (2d ed. 1989)). The court then held that an assault eight days after the defendant committed bank robbery in a different state did "not meet the ordinary meaning of the term 'immediate.'" *Id.*

Although dictionaries may assist in understanding "immediate flight," this phrase also appears in legal materials concerning felony murder and robbery, where we may find further assistance. The term "immediate flight" is relevant to the felony-murder rule:

> [E]ven if it is clear beyond question that the crime was completed before the killing, the felony-murder rule might still apply. The most common case is that in which the killing occurs during the defendant's flight. A great many of the modern statutes contain language—typically the phrase "or in *immediate flight* therefrom"—making this absolutely clear. But even statutes without such language have rather

20

consistently been construed to extend to *immediate flight* situations.

2 Wayne R. LaFave, Substantive Criminal Law § 14.5(f)(1) (3d ed. 2018) (citations omitted) (emphasis added). In this context, courts "assessing what flight is sufficiently immediate[] . . . require that there have been '*no break in the chain of events*,' as to which a most important consideration is whether the fleeing felon has reached a '*a place of temporary safety*.'" *Id.* (emphasis added); *see also People v. Wilkins*, 295 P.3d 903, 909 (Cal. 2013), *modified,* (May 1, 2013); *People v. Gladman*, 359 N.E.2d 420, 424 (N.Y. 1976).[12]

Reaching a place of temporary safety is also relevant to robbery law. "Federal and state courts have long held that the offense conduct for robbery does not end when the initial taking is complete. Rather, the offense conduct continues until the perpetrator has won his way to a *place of temporary safety* because escape is inherent to the crime of robbery." *United States v. Figueroa-Cartagena*, 612 F.3d 69, 79 (1st Cir. 2010) (emphasis added) (quotations omitted).

b. *Analysis*

Mr. Patton argues that (i) the shooting was not his relevant conduct for purposes of the Official Victim Guideline, (ii) the Guideline requires an additional determination that

---

[12] Courts have not used felony-murder law's definition of "immediate flight" in construing § 3A1.2(c)(1), but they have consulted legal sources to discern the meaning of "assault" in § 3A1.2(c)(1). *See United States v. Olson*, 646 F.3d 569, 572 (8th Cir. 2011) ("We join those circuits that have concluded that the term 'assault' in the Official Victim enhancement is a reference to common-law criminal assault."); *see also United States v. Jones*, 740 F.3d 127, 138-39 (3d Cir. 2014).

goes beyond relevant conduct to show he was "otherwise accountable" for the shooting, and (iii) the shooting occurred after "immediate flight" from the robbery had ended. We disagree.

### i. Relevant conduct

As explained above, Mr. Harris's shooting of Detective Hill was relevant conduct for Mr. Patton's robbery offense because the shooting was within the scope of the agreed robbery, in furtherance of it, and foreseeable. It was his relevant conduct notwithstanding his arrest.

### ii. Otherwise accountable

"[O]therwise accountable" in the Official Victim Guideline is the same as "jointly undertaken criminal activity" in the Relevant Conduct Guideline. No separate determination was required that Mr. Patton was "otherwise accountable" for the shooting. The Relevant Conduct Guideline applies to the Official Victim Guideline—and other guidelines in Chapter Three—unless "otherwise specified." U.S.S.G. § 1B1.3(a). The phrase "a person for whose conduct the defendant is otherwise accountable" in the Official Victim Guideline does not specify a different definition of relevant conduct. *See* U.S.S.G. § 3A1.2(c). Rather, as we held in *Johnson*, the phrase "otherwise accountable" refers to the definition of relevant conduct codified in § 1B1.3(a)(1)(B). *See Johnson*, 977 F.2d at 1383.

Mr. Patton urges that we follow the Eighth Circuit's holding in *Iron Cloud* that "otherwise accountable" has a meaning specific to the Official Victim Guideline. *See Iron Cloud*, 75 F.3d at 390. We decline to do so. Applying § 1B1.3(a)(1)(B)'s definition

22

of relevant conduct to the Official Victim Guideline is more in keeping with our precedent, the text of the Guidelines, and the history of the Guidelines amendments.

### iii. "Immediate flight"

The district court applied § 3A1.2(c)(1) to the facts to determine that Mr. Harris was in "immediate flight" when he shot Detective Hill. Mr. Patton's challenge to this determination calls for further discussion of our standard of review.

"We review the district court's interpretation of the Guidelines de novo and any factual findings for clear error, giving due deference to the district court's application of the [G]uidelines to the facts." *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010) (quotations omitted) (reviewing application of the Official Victim Guideline).[13] "[D]etermination of whether facts . . . satisfy a prescribed standard . . . is a mixed question of fact and law." *Campbell v. Bartlett*, 975 F.2d 1569, 1574 (10th Cir. 1992). "We review mixed questions under the clearly erroneous or de novo standard, depending on whether the mixed question involves primarily a factual inquiry or the consideration of legal principles." *United States v. Kinslow*, 105 F.3d 555, 557 (10th Cir. 1997)

---

[13] Before the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), 18 U.S.C. § 3742(e) instructed courts of appeals to "give due deference to the district court's application of the guidelines to the facts." Because the holding in *Booker* conflicted with another provision in § 3742(e) providing for "de novo review of departures from the applicable Guidelines range," 543 U.S. at 259, the Court "excised" § 3742(e) entirely, *id.* at 245, and held courts of appeals should review sentences for "reasonableness," *id.* at 259-61. Nonetheless, "[e]ven after *Booker*, . . . [we give] due deference to the district court's application of the [G]uidelines to the facts." *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006).

(quotations omitted); *see also Gallardo v. United States*, 752 F.3d 865, 870 (10th Cir. 2014).

Application of certain Guidelines is so fact-focused that we review for clear error. For example, application of U.S.S.G § 3B1.1(c)'s enhancement for the defendant's role as an organizer, leader, manager, or supervisor in criminal activity presents a "mixed question of law and fact that is subject to the clearly erroneous standard of review." *United States v. Marquez*, 833 F.3d 1217, 1223 (10th Cir. 2016).[14] We have explained that application of § 3B1.1 is "firmly rooted in sophisticated factual determinations based on the sentencing court's assessment of the broad context of the crime." *United States v. Pena-Hermosillo*, 552 F.3d 1108, 1112 (10th Cir. 2008) (quotations omitted) (referring to § 3B1.1(b)).[15]

So too here. Even with the guidance of dictionaries and uses of the phrase "immediate flight" in other legal contexts, we recognize that "immediate" is a relative term and that applying "immediate flight" in a particular case is a fact-intensive exercise

---

[14] *See also United States v. Snow*, 663 F.3d 1156, 1162-63 (10th Cir. 2011) (reviewing application of § 3B1.1(c) for clear error); *United States v. Fleming*, 667 F.3d 1098, 1108 (10th Cir. 2011) (applying clear error review to the district court's determination that the defendant's out-of-court statements constituted an attempt to obstruct justice for the purposes of § 3C1.1).

[15] Courts have used a less demanding threshold to trigger clear error review. *See United States v. Clinton*, 825 F.3d 809, 811 (7th Cir. 2016) ("Where the district court bases the application of a sentencing guideline on factual findings, we review for clear error." (quotations and brackets omitted)); *United States v. Dodd*, 770 F.3d 306, 309 (4th Cir. 2014) ("If the application turns on a question of fact, the clear error standard applies; if it turns on a legal interpretation, de novo review is appropriate."); *see also Kinslow*, 105 F.3d at 557.

that requires attention to the broad context of the crime.  Accordingly, the determination of "immediate flight" for the purposes of § 3A1.2(c)(1) "is a mixed question of law and fact that is subject to the clearly erroneous standard of review."  *See Marquez*, 833 F.3d at 1223; *see also United States v. Sanders*, 929 F.2d 1466, 1474-75 (10th Cir. 1991) ("The application of the sentencing guidelines presents a mixed question of fact and law.").

Mr. Patton urges that Mr. Harris's shooting falls outside the dictionary definition of "immediate" and therefore the Official Victim Guideline does not apply.  Although we agree with the Eighth Circuit that "reading § 3A1.2(c)(1) to include all relevant conduct would make the phrase 'immediate flight therefrom' surplusage," *Collins*, 754 F.3d at 631, we disagree with Mr. Patton.  Whether we use felony-murder law's meaning of "immediate flight" or the dictionary definition of "immediate" to narrow the application of the Official Victim Guideline, we affirm the district court.

First, the phrase "immediate flight" has a legal meaning.  *See* 2 LaFave, Substantive Criminal Law § 14.5(f)(1).  The felony murder rule requires for "immediate flight" that "there [has] been no break in the chain of events.'"  *Id.* (citations omitted).  This calls for a determination as to "whether the fleeing felon has reached a 'place of temporary safety.'"  *Id.* (citations omitted).  Further, most states use arrival at a place of temporary safety to limit the temporal scope of a robbery.  *See Figueroa-Cartagena*, 612 F.3d at 79.

With very few cases construing "immediate flight" in the Official Victim Guideline available to it, the district court here appropriately asked whether there was a

25

"break in causation between the flight from the robbery and the shooting." ROA, Vol. III at 114. During the hour between the robbery and the shooting, Mr. Harris fled by car with Mr. Patton and then on foot once the car stopped, traveling another two or three miles to where he shot Detective Hill. Detective Hill had encountered Mr. Harris after traveling along the route he hoped would lead him to find Mr. Harris. Mr. Harris was still on foot when Detective Hill found him. It was not clear error for the district court to determine that there was no "break in causation between the flight from the robbery and the shooting" and consequently that the shooting "was part of the immediate flight" from the robbery. *Id.* at 114.

Second, the district court's conclusion is consistent with dictionary definitions of "immediate."[16] Divorced from context, we cannot say whether "instant," "made or done at once," "occurring at once," or "occurring without delay" means that something immediate must happen within a minute, an hour, or a day. *See Dougherty*, 754 F.3d at 1359 (collecting dictionary definitions of "immediate"). Perhaps after an hour has elapsed, driving a car away from an undetected burglary would place a defendant beyond "immediate flight." But here a responding officer quickly found Mr. Patton and Mr. Harris driving from the scene of the robbery, and officers set up a perimeter to contain Mr. Harris after he fled the getaway car on foot. Mr. Harris shot a detective who, hoping to find Mr. Harris, drove in the direction officers saw Mr. Harris flee.

---

[16] The dictionary defines only the word "immediate," not the Guideline's phrase "immediate flight."

26

Citing only *Dougherty*, Mr. Patton points to no case holding that "immediate flight" ends within an hour. *See* Aplt. Br. at 23; Aplt. Reply Br. at 10-11. And in *Dougherty*, the assault on a law enforcement officer occurred eight days after the defendant had committed bank robbery in a different state. 754 F.3d at 1356. The court held the lapse of eight days and travel from Georgia to Colorado did "not meet the ordinary meaning of the term 'immediate.'" *Id.* at 1359; *see also United States v. Gibson*, 595 F. App'x 911, 913 (11th Cir. 2014) (unpublished) ("Gibson's assault was not 'immediate,' as enough time had passed that Gibson was able to spend the night at a hotel, be interviewed by the FBI, and be transferred to the local police department.").

The dictionary definitions of "immediate" denote a short lapse of time. An hour may not be "immediate" in the context of every flight from an offense and may be debatable in this case. But because applying the dictionary definitions of "immediate" or legal definitions of "immediate flight" requires consideration of the factual context, and because we review for clear error, we hold the district court did not err in concluding that Mr. Harris's shooting occurred during immediate flight.

\* \* \* \*

The district court did not err in applying the Official Victim Guideline. The shooting was Mr. Patton's relevant conduct under § 1B1.3(a)(1)(B), so he was "otherwise accountable" for it. Further, the shooting occurred during "immediate flight" from the robbery.

### III. CONCLUSION

We affirm the district court's judgment.