**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 20, 2023**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GILBERT J. GALLEGOS,

Defendant - Appellant.

No. 22-2107
(D.C. No. 2:20-CR-01587-KG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **EBEL**, and **EID**, Circuit Judges.
_____

Gilbert J. Gallegos appeals his sentence after pleading guilty to two counts of

production of child pornography and one count of possession of child pornography.

Over ten months, Mr. Gallegos repeatedly assaulted his daughter's 10-year-old friend

when she came to his house to play.  During several of the assaults, Mr. Gallegos

took photographs and videos of the victim and used social media to lure her into

additional assaults.

The district court imposed a 45-year sentence, including an enhancement based

on the use of a social-media application to send and receive sexually-explicit content.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Gallegos contends that the enhancement was improper based on the timeline of the assaults in Counts 1–3. We disagree. The district court did not err in finding the photos, videos, and exploitative social-media messages were part of Mr. Gallegos's continuing course of illicit conduct. Accordingly, the application of the computer enhancement was not in error. The sentence imposed was substantively reasonable given the district court's careful consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

## I.  Background[1]

Between July 2019 and April 2020, Mr. Gallegos sexually abused his daughter's 10-year-old friend. The victim often went to Mr. Gallegos's house to visit her friend M.G., Mr. Gallegos's daughter. Mr. Gallegos sexually abused the young friend almost every time she went to his house, sometimes taking pictures and videos of the assaults. Mr. Gallegos communicated with the victim using the social-media platform Snapchat, sending her lewd pictures and messages, including instructions from Mr. Gallegos to delete the messages he sent her.

In April 2020, the victim's mother, A.S., discovered evidence of Mr. Gallegos's abuse of her daughter when she viewed sexually-explicit messages from her daughter's Snapchat account. Mr. Gallegos was arrested. A forensic examination of his cell phone revealed two videos dated July 2, 2019, that showed the victim naked from the waist down, laying with her legs spread open on the

---

[1]  These facts are taken from the district court's findings at the sentencing hearing. R., Vol. IV at 33–34; R., Vol. II at 82–83.

ground while Mr. Gallegos rubbed his erect penis around her genitals until he ejaculated.  The forensic examination also located the equivalent of hundreds of visual depictions of child pornography that did not involve the victim.

Mr. Gallegos was indicted on two counts of production of visual depictions of a minor engaging in sexually-explicit conduct under 18 U.S.C. §§ 2251(a), 2251(e), and 2256, and one count of possession of material containing or constituting child pornography under 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(1).  Counts 1 and 2 occurred on July 2, 2019, while Count 3 began on July 2, 2019, and continued to April 8, 2020.

Mr. Gallegos pleaded guilty to the charges without a plea agreement. Following his guilty plea, the probation office issued a presentence investigation report that assessed Mr. Gallegos's total offense level of 42, a criminal history category of I, and a guidelines range of 360 to 960 months imprisonment.[2]

The PSR also assessed a two-level enhancement under U.S.S.G. § 2G2.1(b)(6)(B)(i) for using a computer or interactive computer service to solicit a minor to engage in sexually-explicit conduct.  Mr. Gallegos objected to the enhancement, also requesting a downward variance to the statutory minimum sentence of 15 years.  In support, Mr. Gallegos submitted a sealed sex offender evaluation report concluding that he presented a low risk of recidivism.

---

[2]  Based on Mr. Gallegos's offense level and criminal history, the guideline imprisonment range came out to 360 months to life imprisonment, but the statutorily authorized maximum sentence in this case is 960 months.

At sentencing the district court overruled Mr. Gallegos's objection and sentenced him to 30 years imprisonment as to Counts 1 and 2, to run concurrently, and 15 years' imprisonment as to Count 3, to run consecutively for a total term of 45 years.

## II.  Discussion

Mr. Gallegos contends that both the computer enhancement and the length of his sentence constitute reversible error.  We address each argument in turn.

### A.  Computer enhancement

Mr. Gallegos first argues that the district court erred by overruling his objection to the revised presentence investigation report and applying the two-level computer enhancement in (B)(i).[3]  He argues the enhancement does not apply because he produced the sexually-explicit videos before he engaged his daughter's friend on Snapchat.

"When evaluating sentence enhancements under the Sentencing Guidelines, this Court reviews the district court's factual findings for clear error and questions of law de novo." *United States v. McDonald*, 43 F.4th 1090, 1095 (10th Cir. 2022).  "In applying the clear-error standard, we can reverse only if the finding was simply not plausible or permissible in light of the entire record on appeal." *United States v. Worku*, 800 F.3d 1195, 1201 (10th Cir. 2015) (internal quotation marks omitted).

---

[3]  If the two-level enhancement were not applied, the total offense level would have been 40 and the guideline range would have been 292 to 365 months.

"[S]entencing enhancements . . . need be determined by only a preponderance of the evidence." *United States v. Craig*, 808 F.3d 1249, 1259 (10th Cir. 2015).

Mr. Gallegos was convicted of three counts of sexual abuse of a minor, including the production of sexually-explicit content, and possession of child pornography. 18 U.S.C. §§ 2251(a)(e); 2256; and 2252A. Under the United States Sentencing Guidelines, convictions under these counts are entitled to enhanced sentences if the defendant used a computer (cell phone) or interactive computer service (social media, such as Snapchat) during the crimes.

The computer enhancement states:

> If, for the purpose of producing sexually explicit material . . ., the offense involved . . . the use of a computer or an interactive computer service to (i) persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct . . . increase by 2 levels.

U.S.S.G. § 2G2.1(b)(6)(B)(i). As a threshold matter, a cell phone is a "computer" under federal law, which defines the term as

> an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device.

18 U.S.C. § 1030(e)(1). Snapchat is an "interactive computer service" as defined by 47 U.S.C. § 230(f)(2):

> The term "interactive computer service" means any information service, system, or access software provider that

5

> provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

*Id.*

The Guidelines instruct how to apply the enhancement.  Application Note 6 to § 2G2.1 tells us:

> Subsection (b)(6)(B) provides an enhancement if the *offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material or for the purpose of transmitting such material live or otherwise to solicit participation by a minor in such conduct for such purposes*.  Subsection (b)(6)(B) is intended to apply only to *the* use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor.  Accordingly, the enhancement would not apply to the use of a computer or an interactive computer service to obtain airline tickets for the minor from an airline's Internet site.

U.S.S.G. § 2G2.1 cmt. n.6(B) (emphasis added).

Mr. Gallegos objected to the application of the enhancement and explained that his conduct could not support the computer enhancement because the videos were produced "on or about" July 2, 2019, while he sent the Snapchat messages to the victim only *after* that date.  According to Mr. Gallegos this means he did not use his phone or Snapchat for the purpose of producing sexually-explicit material.

We first note that the language of the computer enhancement does not require that the use of a computer or an interactive computer device occur *before* the production of sexually-explicit material.  Instead, the enhancement references

6

"*conduct*" associated with the "*offense*," which is defined as "the offense of conviction *and* all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context."  § 1B1.1, cmt. n.1(I) (emphasis added).  Because no other meaning of "offense" is specified in § 2G2.1, offense as used in the enhancement and defined by § 1B1.1 encompasses all "relevant conduct" committed during the commission of the crime.  Relevant conduct is defined as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that *occurred during the commission of the offense of conviction*, in preparation for that offense, *or in the course of attempting to avoid detection or responsibility for that offense*."  U.S.S.G. § 1B1.3(a)(1) (emphasis added).[4]  While we do not reach the

---

[4]  *See also United States v. Wilson*, 17 F.4th 994, 1001 (10th Cir. 2021) ("Subdivision (a)(1)(A) [of § 1B1.3(a)] encompasses 'all acts and omissions committed . . . by the defendant; and . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or *in the course of attempting to avoid detection or responsibility for that offense.*'" (emphasis added)); *United States v. Patton*, 927 F.3d 1087, 1096 (10th Cir. 2019) ("Relevant conduct includes acts and omissions 'in the course of attempting to avoid detection or responsibility' for the offense." (citing § 1B1.3(a)(1))); *United States v. Garcia-Rivas*, 669 F. App'x 960, 961 (10th Cir. 2016) ("Under § 1B1.3 [relevant conduct] includes all acts and omissions of a defendant "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."); *United States v. McCowan*, No. 21-8035, 2022 WL 572475, at *3 (10th Cir. Feb. 25, 2022) ("Relevant conduct includes 'all acts and omissions' 'during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.'" (citing § 1B1.3(a)(1))).

While our circuit precedent is clear that relevant conduct under § 1B1.3(a)(1) contemplates all acts and omissions of a defendant during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to

other subsections of § 1B1.3 here, we note that "[a] defendant can be 'accountable for particular conduct' under more than one subsection of § 1B1.3." *United States v. Solis*, 746 F. App'x 764, 767 (10th Cir. 2018) (citing § 1B1.3 cmt. nn.2, 4(A)(i)).

Mr. Gallegos labors under the false impression that the computer enhancement is applicable only to his *offense of conviction*. As shown by the Guidelines' definitions, this is far too narrow a reading of the computer enhancement. Instead, Mr. Gallegos is liable for the full extent of his *conduct — "the offense of conviction and all relevant conduct.*" § 1B1.1, cmt. n.1(I) (emphasis added). The definition of relevant conduct included Mr. Gallegos's ongoing efforts to lure and entice the victim back to his house for his intended sexual assaults. And relevant conduct also includes his efforts to "avoid detection or responsibility for that offense," § 1B1.3(a)(1)—he normalized his exploitation of the victim by sending sexually-explicit content to her and attempted to avoid detection by *instructing her to delete his messages*. Normalizing his exploitation of the victim encouraged her not to tell anyone about his July 2, 2019, production of child pornography and requesting the deletion of his subsequent sexually explicit messages would have impeded, and did impede, the ultimate discovery of that production. *United States v. Altamirano-*

---

avoid detection or responsibility for that offense, we note to be certain and for the sake of edification that this interpretation agrees with the Sentencing Commission's Primer on Relevant Conduct (2022). The Primer states, under Conduct of the Defendant (§ 1B1.3(a)(1)(A)), that "[r]elevant conduct under § 1B1.3(a)(1)(A) includes acts and omissions done or caused by the defendant during three time periods: (i) in preparation for the offense; (ii) during the offense; and (iii) following the offense in an attempt to avoid detection." Office of Gen. Counsel, U.S. Sentencing Comm'n, Primer: Relevant Conduct 3 (2022) (citing § 1B1.3(a)(1)).

*Quintero*, 511 F.3d 1087, 1095 (10th Cir. 2007) ("Relevant conduct for sentencing purposes . . . comprises more, often much more, than the offense of conviction itself, and may include uncharged and even acquitted conduct." (internal quotation marks omitted)); *see also Witte v. United States*, 515 U.S. 389, 403 (1995) (noting that relevant conduct is a "sentencing enhancement regime[] evincing the judgment that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity").

The district court's factual findings made clear that Mr. Gallegos's messages to the victim via Snapchat, which occurred after the July 2 videos, were for the ongoing purpose of producing sexually-explicit images and videos of the victim. R., Vol. IV at 33–34; R., Vol. II at 82–83. The record also revealed that Mr. Gallegos used Snapchat to lower the victim's inhibitions so that he could continue to sexually assault her, record that abuse, and lastly, to attempt to escape detection and responsibility by having her delete the messages he sent her.[5,6] The district court stated as much during the sentencing hearing:

---

[5] Mr. Gallegos's Snapchat messages to the victim included: graphic pictures of his genitals; telling the victim that he would penetrate her when they got together; sexually explicit messages, including that he missed her, that he wanted to engage in oral sex, and that he wanted to use his "monster" on her; and finally, telling her to delete the messages he sent. R., Vol. II at 6–8.

[6] The district court made findings that "Gallegos told [the victim] to delete the message he sent her on Snapchat." R., Vol. II at 83. The inference that he did so in order to escape detection and avoid responsibility is a reasonable one.

The sentencing court did not apply the enhancement on this basis, but we have the "discretion to affirm on any ground adequately supported by the record," *United*

I'm finding that, indeed, Mr. Gallegos used a computer, i.e., a cell phone, and utilized Snapchat to send messages and images in a way that enticed or solicited this young victim to engage in sexually explicit conduct. While it's true that she went to Mr. Gallegos' house, in part, to visit and even play with her friend, Mr. Gallegos' daughter, the messages that were sent clearly, to me, were intended and had the result of enticing—attempting to entice, at least, this young victim to engage in sexually explicit conduct. It's certainly the purpose that they were sent, and that's, I think, sufficient to warrant the upward two-level adjustment.

R., Vol. IV at 34–35.

Given the support in the record and the preponderance-of-the-evidence standard for sentencing enhancements, the district court's factual findings were not clearly erroneous, and it did not err in applying the computer enhancement.

Mr. Gallegos disagrees with our interpretation of § 2G2.1(b)(6)(B)(i) but his arguments rely on cases that say nothing of his preferred interpretation of the computer enhancement. For example, Mr. Gallegos relies on *United States v. Reaves*, 253 F.3d 1201, 1205 (10th Cir. 2001), for the proposition that the computer enhancement cannot be applied to conduct that occurred after the commission of the offense. But *Reaves* dealt with interpreting the term "solicit" in the 1998 version of

---

*States v. Chavez*, 976 F.3d 1178, 1203 n.17 (10th Cir. 2020) (internal quotation marks omitted). "[I]n exercising that discretion," we are guided by the fact that "the parties have fully briefed and argued the alternative ground, and . . . they have had a fair opportunity to develop the factual record." *Id.* (internal quotation marks omitted). Mr. Gallegos addressed this ground in his opening brief. Aplt. Br. at 26. The government likewise addressed this issue. Aple. Br. at 15. In his reply brief, Mr. Gallegos repeats his argument from the opening brief. Reply Br. at 4. Because Mr. Gallegos had a fair opportunity to address this ground and further factual development by the parties was unnecessary, affirming on this ground as an alternative holding is not unfair to Mr. Gallegos.

the computer enhancement, not with the temporal aspect of the enhancement. *Id.*

That the defendant in *Reaves* used a computer to show sexually-explicit content to his

victims *before* the production of child pornography says nothing about whether the

computer enhancement may be legally applied when the use of a computer occurs

only after the production of sexually-explicit material. *Id.* at 1203. Indeed, the

defendant in that case also showed his victims sexually-explicit imagery "*after* their

participation in sexually explicit conduct." *Id.* (emphasis added).

Mr. Gallegos's reliance on *United States v. Raiburn*, 20 F.4th 416 (8th Cir.

2021), is also misplaced. Mr. Gallegos cites *Raiburn* for the proposition that the

application of the computer enhancement was proper when a defendant requested

sexually-explicit photos from a minor using a cell phone. Like *Reaves*, this

proposition is both true and unhelpful to his argument. The relevant issue in *Raiburn*

was whether the district court erred in concluding that the parties' mutual

masturbation over a video call satisfied the "participation with a minor in sexually

explicit conduct" language from § 2G2.1(b)(6)(B)(ii). *Id.* at 424–25. The Eighth

Circuit did not address Raiburn's argument because it found that such error by the

district court, if it occurred, was harmless since the defendant's conduct supported

the enhancement from subsection (B)(i) instead. *Id.* at 425.

The factual basis for the guilty plea made clear that Raiburn had "knowingly

employed and used the minor victim to engage in sexually explicit conduct by

communicating with her via cellular phone and requesting she take a selfie of her

genitals and send him the photo via text message." *Id.* (cleaned up). The minor

11

victim took such an explicit photo using her cell phone and sent it to Raiburn's cell phone via text message. *Id.* Absent from *Raiburn* is any discussion of a timing element of the enhancement.

Mr. Gallegos's remaining cases are similarly as unpersuasive. They are factually distinct from his pattern of conduct with the victim here and do not engage with any temporal aspect of the computer enhancement. *See United States v. Turner*, 756 F. App'x 576, 580–81 (6th Cir. 2018) (affirming the application of the computer enhancement for use of a computer in soliciting participation of a minor in sexually-explicit conduct and for the purpose of producing sexually-explicit material); *United States v. Zagorski*, 807 F.3d 291, 293–94 (D.C. Cir. 2015) (affirming the district court's application of § 2G2.1(b)(6)(B) when the defendant sent sexually-explicit material of a minor to another person and also solicited that person to engage in sexual activity with a minor); *United States v. Roman-Portalatin*, 476 F. App'x 868, 869–70 (1st Cir. 2012) (concluding that the defendant was not prejudiced by the district court's incorrect reference to subsection (B)(ii) because, as an alternate enhancement, subsection (B)(i) could have been applied when the defendant used a computer to induce a minor to have sex with him and to send the defendant explicit photos of herself).

In sum, the district court did not err in applying the computer enhancement.

### B. Reasonableness

Mr. Gallegos also challenges his sentence of 45 years as substantively unreasonable.

"We review the substantive reasonableness of all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *United States v. Lente*, 759 F.3d 1149, 1157–58 (10th Cir. 2014) (internal quotation marks omitted). "Under this standard, we will deem a sentence unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (internal quotation marks omitted). "When evaluating the substantive reasonableness of a sentence, we afford substantial deference to the district court, and determine whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Gieswein*, 887 F.3d 1054, 1064 (10th Cir. 2018) (internal quotation marks omitted). "[A] within-Guidelines sentence is entitled to a presumption of substantive reasonableness on appeal." *United States v. Craig*, 808 F.3d 1249, 1261 (10th Cir. 2015) (internal quotation marks omitted).

When considering whether a sentence is substantively reasonable, we ask "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Cookson*, 922 F.3d 1079, 1091 (10th Cir. 2019) (internal quotation marks omitted). The § 3553(a) factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense and promote respect for the law; the need to deter criminal conduct; and the need to protect the public from future crimes.

Because Mr. Gallegos's sentence was within the Guidelines, it is entitled to a presumption of reasonableness. *Craig*, 808 F.3d at 1261. Mr. Gallegos argues he can rebut this presumption because his 45-year sentence is greater than necessary to fulfill the basic sentencing objectives of retribution, incapacitation, and deterrence. While he recognizes the need for retribution given the "horrendous" nature of the offense, R., Vol. IV at 67, Mr. Gallegos contends that 45 years is longer than necessary to satisfy that need. Moreover, Mr. Gallegos reasons that his drug problems mitigate his moral culpability and that he immediately accepted responsibility, cooperated with the prosecution, and demonstrated great remorse.

Mr. Gallegos also attests that the interests of incapacitation and deterrence do not justify a 45-year sentence. Mr. Gallegos relies on Bureau of Justice Statistics for the proposition that sex offenders are less likely than other offenders to be rearrested or go back to prison and that rates of recidivism for sex offenders plummet with age. Aplt. Br. at 32. Mr. Gallegos also notes that he would be close to 60 years old at release with the imposition of a 15-year sentence, and any risk of recidivism would be lowered. With the imposition of a 15-year sentence, Mr. Gallegos argues he could resolve his drug habit and his minor daughter would be an adult upon his release, so he would not be near children.

The district court considered these same arguments at sentencing, noting that Mr. Gallegos was "appropriately remorseful," had the minimum criminal history category of I, and was found to be "not a risk for future danger and future recidivism" by the doctor conducting his sex-offender evaluation report. R., Vol. IV

14

at 67–69. But the court also noted that Mr. Gallegos's drug use, while a contributing factor, was not the only reason for his conduct; that the doctor conducting his evaluation did not consider the victim's forensic interview so while "somewhat helpful," the report was neither complete nor "entirely helpful"; and that "given the nature of the offense and [Mr. Gallegos's] methodology in luring and taking advantage of [the victim]," the court considered him dangerous and viewed him as a future danger. *Id.* The district court further noted that any sentence it imposed "has to protect the public, that certainly includes children, as well as to bring just punishment for victimizing [the child]." *Id.* at 69–70. Finally, the court acknowledged its intent to protect the victim from Mr. Gallegos until a time she was older and more secure. *Id.* at 73.

The district court considered Mr. Gallegos's arguments, assessed them under the § 3553(a) factors, and imposed a guideline sentence. Mr. Gallegos's sentence of 45 years was well within the bounds of permissible choices, and he has not met his burden to rebut the presumption of reasonableness.

## III. Conclusion

We affirm the district court.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

15